Timothy FEHRING and Susan M. Fehring, Plaintiffs-Respondents and Cross-Appellants-Petitioners,

v.

REPUBLIC INSURANCE COMPANY and Republic Financial Services, Inc., Defendants-Appellants and Cross-Respondents.

Supreme Court

*No. 81-2445. Argued January 3, 1984.—Decided May 4, 1984.*

(Also reported in 347 N.W.2d 595.)

For the petitioners there were briefs, in court of appeals, by *Richard C. Gad* and *Litow, Gad & Hayman, S.C.*, Milwaukee, and oral argument by *Richard C. Gad*.

For the defendants-appellants and cross-respondents there was a brief by *John A. Hamell, Jr.*, and *Rausch, Hamell, Ehrle, Sturm & Blom, S.C.*, Milwaukee, and oral argument by *John A. Hamell, Jr.*

LOUIS J. CECI, J.   This review concerns a jury verdict finding that respondent Republic Insurance Company (Republic) acted in bad faith by refusing to offer a reasonable amount in settlement of the insureds' claim under a casualty insurance policy.  The jury awarded the Fehrings, the insured petitioners, $12,500 on the insurance policy and $10,000 in compensatory damages following a finding of bad faith on Republic's part.  The trial court for Milwaukee county, Honorable John E. McCormick, Circuit Judge, approved the verdict and, in addition, awarded the Fehrings $23,252.53 for actual costs and attorney fees on the bad-faith claim.  The court of appeals concluded, in an unpublished opinion, that as a matter of law, Republic's conduct did not constitute bad faith and reversed the trial court's judgment. We reverse the court of appeals because we conclude that the evidence supports a jury finding that Republic did indeed act in bad faith.  However, we also conclude that the Fehrings are not entitled to attorney fees.

On February 21, 1979, the Fehrings' home suffered water damage due to a burst water pipe.  Their home was insured by a homeowners insurance policy issued by Republic.  The home was vacant at the time that the damage occurred, but when the Fehrings discovered it on February 21, they contacted Republic almost immediately.

Republic's claims adjuster, William Reuteman, inspected the Fehrings' home during the week of February

26. Reuteman testified that following his inspection, he recommended that Republic send the Fehrings a proof of loss form in the amount of $8,000 to cover the damage from the burst water pipe. In oral argument, Republic's attorney claimed that the $8,000 figure represented a "reserve" of funds which Republic must set aside in order to satisfy pending claims such as the Fehrings'. Reuteman had testified at an earlier deposition that part of his $8,000 estimate concerned the possible replacement of walls.

On February 28, Reuteman contacted Claude Dwyer of the Dwyer Construction Company. Dwyer also went to the Fehring home to view the damage and informed Reuteman that he might have to do some repair work "behind the walls." Apparently, Dwyer was too busy to handle the job for Republic, but a written memo from Reuteman's supervisor, dated June 14, 1979, indicates that Dwyer had given a verbal estimate of the cost of repairs as "$10–12,000 min."

On March 15, 1979, Joseph Ferrari of Sid Grinker Co. was contacted by Republic. Ferrari inspected the Fehring home on March 16, 1979, without any contact with the Fehrings prior to his inspection. The June 14 memo from Reuteman's supervisor indicates that Ferrari's verbal estimate was "$5,000 min. to try to salvage." However, Ferrari testified that he initially estimated the damage at $3,000 against time and materials and later appraised the damage to be approximately $1,282. He characterized the repair work as involving painting, "patching little bits of plaster, because there wasn't much else." Ferrari's $1,282 estimate was typed shortly before June 28, 1979, and submitted to Republic.

The Fehrings obtained two independent estimates, one by New Berlin Development, Inc., dated April 15, 1979, and one from Thorpe Contractors, dated April 2, 1979. The estimate from New Berlin Development totaled

$15,925 and involved removal and replacement of damaged walls, ceilings, and carpeting, and checking and repairing any damage to the electrical wiring. The Thorpe estimate totaled $5,680 and involved no actual replacement of the damaged walls or ceilings, nor did it entail any investigation for electrical damage. The Fehrings obtained further estimates of $14,500, $9,642, and also an estimate of a $13,900 reduction in the fair market value of the home from Hashek Realty. The Fehrings also retained an attorney, and these estimates were forwarded to Republic.

On June 1, 1979, Reuteman verbally offered to settle the Fehrings' claim for $7,600. The Fehrings declined the offer and, consequently, it was never formalized by Republic. On June 28, however, Republic received the written estimate from the Sid Grinker Company for $1,282. Republic then sent a "sworn statement in proof of loss" to the Fehrings for the "actual cash value loss" of $1,282.65. The Fehrings refused to sign the proof of loss and, on July 13, 1979, filed a complaint against Republic in circuit court. Republic brought a motion for summary judgment, alleging that the Fehrings had not filed the required proof of loss under the terms of the insurance contract.

On January 21, 1980, the trial court heard the motion for summary judgment and ordered the Fehrings to file a proof of loss. On January 25, the Fehrings filed a sworn proof of loss for $155,925. The actual cash value of the property loss was alleged to be $15,925, based upon the New Berlin Development estimate.[1] The trial court subsequently denied Republic's motion for summary judgment, and the case proceeded to trial before a jury on March 10, 1981. Prior to the jury trial, the

[1] The Fehrings demanded $35,000 in compensatory damages, $105,000 in exemplary damages, and costs, disbursements, and attorney fees.

Fehrings had amended their complaint to allege damages for emotional distress resulting from Republic's alleged bad-faith conduct. The fourth day of the jury trial, the Fehrings voluntarily dismissed their claim of emotional distress.

On March 18, 1981, the jury returned a verdict awarding the Fehrings $12,500 on the insurance policy. In addition, the jury found that Republic's conduct constituted bad faith and awarded the Fehrings $10,000 in compensatory damages. No punitive damages were awarded by the jury.

Both parties filed post-verdict motions. The Fehrings' motion for costs and attorney fees based upon the bad-faith claim was granted by the trial court, in the amount of $23,252.53. Republic's motion for reasonable costs and attorney fees incurred by Republic in defending the claim for emotional distress, pursuant to sec. 814.025(3), Stats., was denied.

Subsequently, Republic appealed to the court of appeals. The Fehrings cross-appealed on the question of punitive damages only. The court of appeals noted that the Fehrings had not submitted a proof of loss until after the commencement of the action in circuit court. The court further stated that the amount of the Fehrings' proof of loss, $155,925, "was unsubstantiated by the evidence and was far in excess of all of the contractors' estimates." Consequently, the court of appeals concluded that the Fehrings' claim was "fairly debatable," and Republic was, therefore, justified in challenging the claim. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691–93, 271 N.W.2d 368 (1978). Concerning the issue of whether the trial court had erred by its denial of Republic's motion for reasonable costs and attorney fees under sec. 814.025(3), Stats., the court remanded the cause to the trial court. This was based upon the fact that the motion was denied without any findings by the

trial court. *See, Wurtz v. Fleischman,* 97 Wis. 2d 100, 108, 293 N.W.2d 155 (1980) ; *Sommer v. Carr,* 99 Wis. 2d 789, 792, 299 N.W.2d 856 (1981). The court of appeals did not address any other issues raised by either party on appeal.

The Fehrings subsequently petitioned this court for review, which was granted. The parties have raised four issues before this court. They are as follows: (1) Was there sufficient evidence to support the jury's finding that the Fehrings satisfied the policy's conditions concerning the notice of loss requirement; (2) was there sufficient evidence to support a jury verdict that Republic's actions constituted bad faith; (3) must a new trial be granted on the issue of punitive damages; and (4) did the trial judge err in granting the Fehrings' motion for attorney fees?

## I.

## WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S FINDING THAT THE FEHRINGS SATISFIED THE POLICY'S CONDITIONS CONCERNING THE NOTICE OF LOSS?

Initially, we observe that this appeal concerns a jury verdict in favor of the Fehrings. The standard of review of a jury verdict is that it will be sustained if there is any credible evidence to support the verdict. *Meurer v. ITT General Controls,* 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979). When the verdict has the trial court's approval, this is even more true. *Id.,* citing *Upton v. Tatro,* 68 Wis. 2d 562, 570, 229 N.W.2d 691 (1975). The credibility of the witnesses and the weight afforded their individual testimony is left to the province of the jury. Where more than one reasonable inference may be drawn from the evidence adduced at trial, this court must accept

the inference that was drawn by the jury. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W. 2d 647 (1979). It is this court's duty to search for credible evidence to sustain the jury's verdict. This court is not to search the record on appeal for evidence to sustain a verdict that the jury could have reached, but did not. *Meurer v. ITT General Controls*, 90 Wis. 2d at 450–51, citing *Coryell v. Conn*, 88 Wis. 2d 310, 317, 276 N.W.2d 723 (1979).

The insurance policy in this case contained the standard language required by sec. 203.06, Stats. (1973), on lines 90–122.[2] The relevant portion reads as follows:

---

[2] The policy language is set forth as follows:

"**Requirements in case loss occurs.** The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; **and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss**, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by the

"[W]ithin sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured . . . ."

Republic has taken the position that the Fehrings failed to comply with the above portion of the insurance contract, since they did not file such a proof of loss until Republic brought a motion in the trial court for summary judgment. Timothy Fehring signed the notarized proof of loss on January 25, 1980, approximately eleven months after the damage occurred. Therefore, Republic argues that it properly refused the Fehrings' claim based upon their failure to meet this condition of the contract, because the insured has no right to recover until all such conditions precedent have been met by the insured. *RTE Corp. v. Maryland Casualty Co.,* 74 Wis. 2d 614, 634, 247 N.W.2d 171 (1976). Republic further argues that the sixty-day limitation is a reasonable one and should be considered valid and binding on the Fehrings. *See,* 5A Appleman, *Insurance Law and Practice* sec. 3506 (rev. ed. 1970). Consequently, Republic maintains that the Fehrings failed to meet the burden of showing that they had complied with all the conditions precedent to imposing liability on Republic under the contract. Republic also asserts that as a result of the Fehrings' failure to meet their burden of proof, there is no credible evidence upon which the jury could reach a finding that Republic's offers to settle the claim constituted bad faith, since

---

Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made."

Section 203.06, Stats. (1973), was subsequently repealed by ch. 375, Laws of Wisconsin 1975.

Republic owed no duty to settle the claim with the Fehrings in the first place.

We disagree. In *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 140, 277 N.W.2d 863 (1979), this court discussed the purpose behind such notice requirements.

"[T]he purpose of the requirement . . . is to afford the liability carrier an opportunity to investigate possible claims against the policy . . . . Thus, an insurance company's investigation of a claim cannot commence until the insured has fulfilled his duty of timely notice."

In the *Gerrard* decision, this court held that the insurance company was prejudiced as a matter of law, because the insured's twenty-two-month delay in providing notice prevented the insurer from investigating a claim against the insured. *Id.* at 145.

In the instant case, we find no such prejudice to Republic. The record indicates that the Fehrings contacted Republic almost immediately after their discovery of the damage to their home. Republic responded by sending adjuster Reuteman to investigate the damage in the following week. Therefore, the notice requirement was fulfilled by Fehrings' immediate communication with the company, and Republic was given the opportunity to sufficiently investigate the claim.

Further, the record indicates that on June 28, 1979, Republic sent a "sworn statement in proof of loss" form in the amount of $1,282.65. Reuteman testified that the normal procedure is to send out a proof of loss with the amount already inserted by the company, in order that the company may protect itself as to the amount that is on the form. The form characterized the $1,282.65 amount as the "actual cash value loss." The Fehrings refused to sign the proof of loss because, as their attorney informed Reuteman in a letter dated July 5, 1979,

this amount was "insufficient to cover even ten percent of the damages incurred."

In *Davis v. Allstate Ins. Co.,* 101 Wis. 2d 1, 7, 303 N.W.2d 596 (1981), this court stated that an insured must demonstrate substantial performance with the contractual terms in order to recover under the policy.

"Where a party has met the essential purpose of the contract, he has substantially performed under the contract." *Id.,* citing *M & I Marshall & Ilsley Bank v. Pump,* 88 Wis. 2d 323, 333, 276 N.W.2d 295 (1979).

We conclude that the jury could have found that the Fehrings substantially complied with the terms of the contract. They immediately notified Republic of their loss, and Republic was subsequently able to begin an immediate investigation of the claim. There is ample credible evidence in the record from which the jury could properly conclude that under the circumstances, the Fehrings had complied with the essential purpose of the notice requirement stated in the policy.

## II.

### WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S FINDING THAT REPUBLIC'S ACTIONS IN OFFERING TO SETTLE THE FEHRINGS' CLAIM CONSTITUTED BAD FAITH?

Once again, we are concerned with whether or not there is any credible evidence to support the jury's finding that Republic's actions in offering to settle the Fehrings' claim constituted bad faith. *Meurer v. ITT General Controls,* 90 Wis. 2d at 450.

The leading case concerning bad faith on the part of the insurer is that of *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675. The *Anderson* court defined bad faith

as an intentional tort arising from "a breach of duty imposed as a consequence of the relationship established by contract." *Id.* at 687. The duty to which the court referred in *Anderson* is that of the insurance company to utilize reasonable diligence and fair dealing when settling a claim of the insured. This duty was characterized as a "fiduciary duty" by the *Anderson* court and was based upon the earlier rationale of *Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 231 N.W. 257, 235 N.W. 413 (1930, 1931), which dealt with the insurance company's duty in settling a claim of a third party against the insured. *Id.* at 689.

The *Anderson* decision set out what the insured must establish in order to prove bad faith on the part of an insurer.

"To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691.

The insurer, however, is entitled to challenge claims on the basis of debatable law or facts, and liability will be imposed "only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.* at 693. The *Anderson* definition of bad faith has been reiterated in subsequent cases. *See, Benke v. Mukwonago-Vernon Mut. Ins. Co.,* 110 Wis. 2d 356, 362, 329 N.W.2d 243 (Ct. App. 1982) ; *James v. Aetna Life & Casualty Co.,* 109 Wis. 2d 363, 369, 326 N.W.2d 114 (Ct. App. 1982) ; *Davis v. Allstate Ins. Co.,* 101 Wis. 2d at 8.

Under the first part of the *Anderson* test, the Fehrings must show the absence of a reasonable basis for Republic's denial of the benefits of the policy. Stated another way, the Fehrings must show that a reasonable insurer under the circumstances would not have acted as Republic did by delaying payment of the claim and by

offering amounts which are alleged to be unreasonably low. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d at 692.

Republic argues that the Fehrings' claim on the policy was "fairly debatable" and that, consequently, the insurance company was justified in delaying the payment of the Fehrings' claim and in extending the offer of $1,282.[3] More specifically, Republic argues that a dispute existed as to whether or not the electrical system of the Fehrings' home had sustained damage and actually required repair. Therefore, Republic asserts, and the court of appeals agreed, that there is no credible evidence in the record whereby the jury could have found that the insurance company's actions evinced bad faith.

Once again, we must disagree. We find ample evidence in the record on which the jury could have based a finding of bad faith. We note that initially, when Reuteman inspected the Fehrings' home, Republic's records indicate that he recommended sending the Fehrings a proof of loss form for at least $8,000. Subsequently, the Dwyer Construction Company verbally estimated the cost of repairs at $10,000 to $12,000 and apparently informed Reuteman that some work "behind the walls" might be necessary. The jury could have inferred from this estimate by the Dwyer Company that Republic was made aware of the possibility that the electrical wiring behind the walls might need repair. The jury might also have inferred that Republic instead chose to disregard this information concerning possible electrical repairs, since it relied on the Sid Grinker estimate for $1,282, which essentially consisted of only patching and painting. We also note that the contractor for Sid Grinker did not speak with the Fehrings prior to making his estimate in

---

[3] Republic has not challenged the jury's award of $12,500 under the policy. They have, however, challenged the jury's finding of bad faith and the $10,000 award for compensatory damages based upon this finding.

order to obtain information concerning the extent of the damage or the condition of the house prior to the incident. It appears that he performed only a cursory inspection of the house.

The record also indicates that the Fehrings were initially very cooperative with the insurance company.[4] We further note that the Fehrings obtained a total of four estimates for repair work, ranging from $5,680 by Thorpe Contractors for "cosmetic work" only to $15,925 for removal and replacement of damaged walls, ceilings, and carpeting and for inspecting and repairing any damage to the electrical wiring. The Fehrings also obtained an estimate of the decrease in the house's fair market value of $13,900 from Hashek Realty.

Despite this range in estimates, among them the Dwyer estimate of $10,000 to $12,000 obtained by Republic, Republic chose to offer the Fehrings $1,282 in the proof of loss form.[5] We believe that the jury could have reasonably inferred that Republic had not conducted a neutral investigation of the Fehrings' claim. Rather, the jury must have concluded that Republic had suppressed or disregarded what it considered to be unfavorable estimates—those which involved extensive and possibly necessary repairs—and thus would require Republic to pay a larger amount of compensation to the Fehrings under the policy.

The *Anderson* court utilized the following language concerning the determination of an insurer's alleged bad-faith conduct:

---

[4] It appears that following the offer for $1,282, however, the Fehrings refused any further efforts by Republic to inspect their home.

[5] The record indicates that Reuteman verbally offered the Fehrings $7,600 on June 1, 1979, but this offer was refused by them. It was subsequently never formalized by Republic, through a written offer, etc., and there was some question as to whether it would have been binding upon Republic had the Fehrings accepted it.

"It is appropriate, in applying the test, to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." *Anderson v. Continental Ins. Co.*, 85 Wis. 2d at 692.

There is ample credible evidence in the record to support a finding that Republic did not properly investigate the Fehrings' claim, nor did it subject the results of the investigation to a reasonable evaluation and review, especially as regarding the possible damage to the electrical wiring. While Republic claims that there was a dispute as to the actual existence of damage to the wiring, Republic's conduct indicates that the company was made aware of the possibility of electrical damage from the Dwyer Construction Company's estimate, yet chose to completely disregard any such possibility without further investigation. This may be inferred from the fact that Republic chose to accept Ferrari's cursory inspection and ultimate estimate of only $1,282, which involved only painting and patching of plaster.

It appears that there is credible evidence to show that a reasonable insurer, under the circumstances surrounding the widely ranging estimates, would not have automatically concluded that there was no damage to the electrical system and then accepted the estimate of a contractor which comports with the insurer's initial conclusion while rejecting those which did not. A reasonable insurer would have conducted a "neutral, detailed investigation" and then determined whether the investigation proved the Fehrings' claim to be "fairly debatable" because the alleged damage to the wiring might not have existed. *Benke v. Mukwonago-Vernon Mut. Ins. Co.*, 110 Wis. 2d at 364.

Under the second part of the *Anderson* bad-faith test, the court acknowledged that "the knowledge of the lack of a reasonable basis may be inferred and imputed to an

insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a *reckless indifference to facts or to proof submitted by the insured." Anderson v. Continental Ins. Co.,* 85 Wis. 2d at 693. (Emphasis added.) There is credible evidence to sustain the bad-faith claim in this regard, based upon Republic's reckless indifference to the four estimates submitted by the Fehrings, as well as the estimates from the realtor concerning the reduction in the home's fair market value due to the damage and from Republic's own adjuster and contractor.

For the above reasons, the jury's finding of bad faith and its award of compensatory damages is affirmed.

### III.

### SHOULD A NEW TRIAL BE GRANTED ON THE ISSUE OF PUNITIVE DAMAGES?

The Fehrings argue that the jury should have awarded them punitive damages, based upon the finding that Republic acted in bad faith and, thus, a new trial on this issue is warranted. The *Anderson* decision acknowledged, however, that punitive damages do not necessarily flow from a finding of bad faith. Noting that punitive damages function as a deterrent and are awarded to punish wrongdoers, the *Anderson* court stated that such damages are appropriate "only where the wrong was inflicted 'under circumstances of aggravation, insult or cruelty, with vindictiveness or malice.' " *Anderson v. Continental Ins. Co.,* 85 Wis. 2d at 697, citing *Mid-Continent Refrigerator Co. v. Straka,* 47 Wis. 2d 739, 746, 178 N.W.2d 28 (1970). In *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 268, 294 N.W.2d 437 (1980), this court used the term "outrageous" as "an abbreviation for the type of conduct which justifies the imposition of punitive

damages." *See also, Fahrenberg v. Tengel,* 96 Wis. 2d 211, 222, 291 N.W.2d 516 (1980).

When we review the record in the instant case, we do not find any evidence of "malice" or "cruelty" shown by Republic toward the Fehrings. At most, we note that evidence was presented concerning Republic's cancellation of the insurance coverage on the Fehrings' home in November of 1979.[6] Robert Long, the district office manager at Republic, testified that the Fehrings' policy had been previously renewed on June 1, 1979. However, the damage which is disputed in this case occurred in February of 1979 and, thus, was covered by the insurance policy in effect at that time. Therefore, the cancelled policy is not the one with which we are concerned in this lawsuit, and we find Republic's actions under this policy have little or no relevancy to the instant case. Accordingly, we find no evidence in the record indicating that Republic exhibited "malice" or "cruelty" toward the Fehrings, and we deny the Fehrings' request for a new trial on the issue of punitive damages.

## IV.

## DID THE TRIAL COURT ERR IN GRANTING THE FEHRINGS' MOTION FOR ATTORNEY FEES?

The trial judge in this case granted the Fehrings attorney fees in the amount of $23,252.53. The judge observed, in a memorandum decision, that Republic's intentional conduct of refusing to pay the Fehrings adequate compensation under the policy forced the Fehrings to expend attorney fees. Therefore, the court con-

---

[6] Apparently, there is some dispute concerning whether or not Republic was justified in cancelling this policy and whether the Fehrings were given proper notice of the cancellation.

cluded that attorney fees "are the direct and foreseeable result of the bad faith and are used by the insurer as leverage to increase the effectiveness of its bad faith actions to defend the insured." We reach a contrary conclusion.

In *Baker v. Northwestern Nat. Casualty Co.*, 26 Wis. 2d 306, 132 N.W.2d 493 (1965), this court considered the issue of whether or not the insured party could recover reasonable attorney fees in an overage action against the insurer. The *Baker* court noted that Wisconsin law generally does not allow recovery of attorney fees unless authorized by statute or contract, except when the fees are the natural and proximate result of a wrongful act by the defendant which has involved the plaintiff in litigation with other parties. *Id.* at 318. *See also, Kohlenberg v. American Plumbing Supply Co.*, 82 Wis. 2d 384, 399, 263 N.W.2d 496 (1978).

The *Baker* opinion employed the following analysis concerning the insured's attempt to recover fees from the insurer based upon the jury's finding of bad faith on the part of the insured:

" 'For the expense incurred in the *present* litigation, we have found that our law generally gives the successful party no recompense beyond the taxable costs which ordinarily include only a portion of his expense. This is the case, however wrongful the suit or groundless the defense. On the other hand, where the present defendant has by his wrongful conduct, be it tort or breach of contract, caused the present plaintiff to defend or prosecute *previous* legal proceedings, the law reverses its restrictive attitude and allows the plaintiff to recover all the expense, including counsel fees, reasonably incurred by him in the prior litigation.' " *Baker v. Northwestern Nat. Casualty Co.*, 26 Wis. 2d at 319–20, citing McCormick, *Damages* (hornbook series), sec. 66 at 246. (Emphasis supplied.)

The court concluded that the insured could not recover attorney fees from the insured.

We reach a similar conclusion. The instant case is not one where Republic's conduct has caused the Fehrings to defend or prosecute previous legal proceedings; therefore, the award of attorney fees is reversed.[7]

In conclusion, we hold that under the facts of this case, there was sufficient evidence to support a finding that Republic's actions surrounding its treatment of the Fehrings' claim constituted bad faith. We also hold that attorney fees are not recoverable in bad-faith actions by the insured against the insurer and that a new trial on the issue of punitive damages is unwarranted in this case.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is affirmed in part, reversed in part, and the cause remanded to the circuit court for entry of judgment consistent with this opinion.

---

[7] Under sec. 814.04(1)(a), Stats., the Fehrings are entitled to $100 in attorney fees.