# UPTHEGROVE HARDWARE, INC., a domestic corporation, Plaintiff-Respondent-Cross-Appellant,

## v.

# PENNSYLVANIA LUMBERMANS MUTUAL INSURANCE COMPANY, a foreign corporation, Defendant-Appellant-Cross-Respondent.†

Court of Appeals

*No. 87–1940. Orally argued July 27, 1988.—Decided September 13, 1988.*

(Also reported in 431 N.W.2d 689.)

† Petition to review denied.

For defendant-appellant there were briefs and oral argument by *James A. Morrison* of *Morrison & Coggins, S.C.,* Marinette.

For plaintiff-respondent there were briefs and oral argument by *Glen Cunningham* of *Marcovich, Cochrane, Milliken & Cunningham,* Superior.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Pennsylvania Lumbermans Mutual Insurance Company appeals part of a judgment in favor of its insured, Upthegrove Hardware, Inc. Upthegrove's action arose out of a claim for losses incurred when a fire destroyed Upthegrove's hard-

ware store. Lumbermans contends that the trial court erred by awarding Upthegrove interest and costs pursuant to sec. 807.01(3), Stats.; the trial court made two errors for which it should have granted a mistrial; the record does not contain credible evidence supporting the jury's finding that Lumbermans acted in bad faith by denying Upthegrove's claim; punitive damages are not appropriate; and the imposition of punitive damages deprived Lumbermans of its fourth, fifth, sixth, eighth, and fourteenth amendment rights under the United States Constitution. Upthegrove cross-appeals the trial court's denial of interest on the policy proceeds under sec. 628.46(1), Stats. We reject all of Lumbermans' arguments but conclude that the trial court erred by not awarding Upthegrove interest on the amount of the underlying claim.

In 1981, James Upthegrove, with some help from his father, purchased a hardware store and a neighboring residence located in Solon Springs, Wisconsin. He operated the store with varying numbers of employees. By 1984, the business was not doing particularly well. Sales were down, debts were up, and Upthegrove had reduced the number of employees. In October, 1984, he switched his business insurance to Lumbermans.

According to testimony presented at trial, on December 27, 1984, Upthegrove was out of town. When he returned between eight and nine that night, he stopped at the store, apparently to check the mail and the day's receipts. He then returned home. Around midnight, Upthegrove's wife heard some noises and asked Upthegrove to investigate. He discovered that the hardware store was on fire. Although the fire department was summoned immediately, the store was totally destroyed.

Upthegrove promptly notified Lumbermans of the loss. Lumbermans sent an adjuster to the scene several days after the fire. One of its investigators, David Bellis, arrived about a week after the fire and another, James Miller, about a month later. They formed a preliminary conclusion that the fire was of incendiary origin because it had at least two points of origin.

When Miller and Bellis questioned Upthegrove as to what he thought the cause of the fire might be, he suggested that a spot lamp and cord might have been the cause. The three men looked for and found the cord in an area of the floor that had burned through. Miller and Bellis took possession of the cord which, without further analysis, they concluded to be "junk" and threw away.

In March, 1985, James Morrison, the attorney who represented Lumbermans at trial, asked Upthegrove to meet with him in St. Paul about his claim. Morrison told Upthegrove that Lumbermans had concluded that he had set the fire and therefore was about to deny his claim. Morrison asked Upthegrove for an explanation that would indicate to the contrary. Upthegrove, who apparently thought Lumbermans still had the cord in its possession and lacked the information gathered by Lumbermans, made no response. In a letter dated March 20, 1985, signed by Morrison, Lumbermans denied Upthegrove's claim. Upthegrove then brought this action for the full policy limits, bad faith, and punitive damages.

At the final pretrial conference, the parties stipulated that the loss occurred and that Lumbermans was liable to Upthegrove for the full claim on the policy unless Lumbermans could prove that Upthegrove intentionally set the fire. After a four-day trial, the

jury found that Upthegrove had not set the fire and that Lumbermans had acted in bad faith by denying the claim. It then awarded Upthegrove $375,000 in punitive damages.

Lumbermans first claims that the court erred by awarding Upthegrove interest and double costs on the verdict from the date an offer of settlement expired because the offer of settlement did not comply with sec. 807.01(3).[1] The offer, which identified itself as a sec. 807.01(3) offer of settlement, contained the phrase, "if acceptance is not received by plaintiff within the statutory period, the offer is deemed withdrawn." Lumbermans argues that the inclusion of this language in the offer rendered it significantly different from the language required to invoke the interest and cost provisions of sec. 807.01. We disagree.

■

The offer was identified as a sec. 807.01 offer, and its terms were consistent with that statute. Lumbermans failed to accept the offer. The sentence in question essentially repeated a provision of the statute and did not add any new conditions to the offer.

---

[1]Section 807.01(3) provides:

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

Therefore, the court did not err by awarding Upthegrove interest and double costs. Because we find the language of this offer consistent with the language of sec. 807.01 we need not, and do not, address the consequences of an offer containing language that is inconsistent with the language of sec. 807.01.

Lumbermans next asserts that the court erred by refusing to allow Morrison to rebut Upthegrove's testimony. Morrison, who was also Lumbermans' trial counsel, had acted as an investigating attorney and had given legal advice to Lumbermans while it was reviewing Upthegrove's claim. In fact, he signed the letter denying Upthegrove's claim.

During his cross-examination of Upthegrove, Morrison alluded to various conversations in which he was either involved or had witnessed, in particular those that took place at the St. Paul meeting. At that point, Upthegrove's counsel stated to the court that Morrison was putting himself at risk of becoming a witness in the case. On redirect, Upthegrove's attorney further questioned Upthegrove about the St. Paul meeting. In response, Upthegrove testified that Morrison had commented to him that "I'll deny that I ever said this if you repeat it, but you seem to be either a very innocent man who is being very tragically denied this claim or the coolest, coolest coolest arsonist that I've ever seen" and that "he couldn't see, with the facts that he had, how the insurance company could justify their actions in this case."

After the close of the testimony, Morrison requested that testimony be reopened so he could take the stand and deny making the latter part of that statement to Upthegrove. The court refused this request. Morrison then requested the judge to instruct the jury that an attorney who testifies as a witness

must withdraw from further participation in the case as an attorney. The court denied this request, whereupon counsel asked for permission to state in his closing argument that "Lawyers can't also be witnesses and then go back to being lawyers," or "I cannot and will not testify about the claim." The court denied that request as well. The trial court based its denials on the problems associated with reopening testimony, the fact that reopening would essentially allow Morrison to testify although he had been able to act as counsel throughout the trial, and that he was aware early in the trial that he might be a witness. The trial court also stated that the instruction and proposed closing argument would in effect be perceived by the jury as a denial by Morrison that he made the statement in question, i.e., he was trying to do indirectly what he could not do directly.

Lumbermans argues that a new trial is warranted because the trial court did not allow Morrison to respond to Upthegrove's testimony. We disagree. Each of these requests was addressed to the trial court's discretion, and we will affirm the trial court as long as it did not abuse that discretion. *Stivarius v. DiVall,* 121 Wis. 2d 145, 157, 358 N.W.2d 530, 536 (1984) (power to reopen testimony); *Turk v. H.C. Prange Co.,* 18 Wis. 2d 547, 551–52, 119 N.W.2d 365, 368 (1963) (content of arguments to jury); *Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 263, 400 N.W.2d 33, 41 (Ct. App. 1986) (jury instructions).

We observe that this issue first arose after Morrison cross-examined Upthegrove about conversations in which Morrison had either participated or witnessed. Morrison's approach invited description of conversations in which he was involved, including

statements he may have made during these conversations. While there was no indication that Upthegrove had previously identified the statement in question, the danger of inquiring into matters where counsel was a witness was known to Morrison at the time he undertook his examination. By proceeding to conduct a cross-examination on that basis, Morrison accepted the risk that the witness might allude to counsel's statements in his response. In addition, Morrison did not request permission to take the stand until after the close of all the testimony. Having delayed his request to testify until after the close of the evidentiary hearing, counsel cannot now complain that the court erred by refusing to reopen testimony for this purpose. This is particularly true in light of the extensive cross-examination that would presumably have been undertaken by Upthegrove's attorney.

In light of all of the circumstances, it cannot be said that the trial court's decision not to instruct the jury as requested was an abuse of the court's discretion. We first note that the requested instruction does not accurately reflect the law. Under limited circumstances, counsel can assume the witness stand, and still maintain the role of counsel. SCR 20:3.7 (1988).[2]

---

[2]SCR 20:3.7 provides:

    (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.
    (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

That this particular case did not present such unusual circumstances does not change the fact that the requested instruction was an incorrect statement of the law. More importantly, it is for the trial court to make an assessment as to the appropriateness of giving such an instruction based upon the court's observations as to the facts and circumstances of the particular case and the evidence presented. *See Nemetz,* 135 Wis. 2d at 263–64, 400 N.W.2d at 41; *McMahon v. Brown,* 125 Wis. 2d 351, 354, 371 N.W.2d 414, 416 (Ct. App. 1985).

Finally, the court did not abuse its discretion when it refused to allow Morrison to include a reference to his inability to testify in his closing argument. Had the court granted Morrison's request, it would have resulted in one of two things. Either Morrison would have been arguing facts before the jury that were not in evidence by essentially denying that he made the statement in question or he would have been making an incorrect statement of the law. Neither is permissible. We conclude that the trial court did not abuse its discretion by declining counsel's request in regard to any of these issues.

Counsel next argues that a question posed to Upthegrove by his attorney as to whether Paul Purdy, a Lumbermans' representative, attempted to get him to settle the case, was prejudicial error. *See* sec. 904.08, Stats. However, immediately after the question was asked and before it was answered, Lumbermans' counsel objected to it. The court sustained the objection and then told the jury to disregard the question. The court also instructed the jury at the conclusion of the trial to disregard all stricken testimony. The court's action resolves any claim of prejudice that might otherwise have resulted from a

reference to the purported offer of settlement. *See State v. Jennaro,* 76 Wis. 2d 499, 508, 251 N.W.2d 800, 804 (1977). Consequently, we find no basis for a mistrial.

■

Lumbermans next challenges the constitutionality of punitive damages. We find no merit to this challenge. Punitive damages have been repeatedly allowed in bad faith insurance cases. *See Davis v. Allstate Ins Co.,* 101 Wis. 2d 1, 303 N.W.2d 596 (1981); *Poling v. WPS,* 120 Wis. 2d 603, 611, 357 N.W.2d 293, 298 (Ct. App. 1984). Punitive damages are not the same as criminal convictions, and Lumbermans has provided us with no authority stating anything to the contrary. The requirement that the middle burden of proof be applied to all punitive damage claims adequately protects Lumbermans' rights. *See Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 300, 294 N.W.2d 437, 458 (1980). The jury was properly instructed as to this burden, the standard of conduct required before punitive damages can be awarded, and the fact that even if it found Lumbermans had acted maliciously, it need not award punitive damages.

Lumbermans next claims that there was not sufficient evidence to support the jury's determination that Lumbermans acted in bad faith and, as a corollary, that punitive damages were not authorized as a matter of law under the circumstances of this case. While the issue is cast in terms of whether the evidence supports the jury's finding of bad faith, we will treat the issue as being whether the evidence was sufficient to support an award of punitive damages.

■

We will uphold a jury's verdict as long as it is supported by credible evidence, and we must search

for evidence to sustain the jury's verdict. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). Determinations as to the weight of the evidence and witnesses' credibility is left to the jury. *Id.* at 305, 347 N.W.2d at 598. Where more than one reasonable inference may be drawn from the evidence, we must accept the inference drawn by the jury. *Id.* 305–06, 347 N.W.2d at 598.

Punitive damages are appropriate only when there has been a showing of an "evil intent deserving of punishment or of something in the nature of special ill-will or wanton disregard of duty or gross or outrageous conduct," *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 697, 271 N.W.2d 368, 379 (1978), where the wrong was inflicted "under circumstances of aggravation, insult or cruelty, with vindictiveness or malice." *Id.* (quoting *Mid-Continent Refrigerator Co. v. Straka*, 47 Wis. 2d 739, 747, 178 N.W.2d 28, 32 (1970)).

We conclude that the jury's award of punitive damages is supported by credible evidence and is not contrary to law. Upthegrove's theory was that Lumbermans failed to conduct an objective investigation and make a good faith consideration of its claim, but instead manufactured a basis upon which to deny the claim in the hope of either avoiding payment altogether or forcing the insured to accept less than the full policy limits in settlement of his claim.

During their investigation, Bellis and Miller discovered a lamp and cord, which Upthegrove suggested to them might have been the cause of the fire. They took possession of the cord but without further analyzing it or notifying Upthegrove, discarded it as "junk." Both Bellis and Miller testified that the cord was

481

unplugged when they found it and that it was not near an area of ignition and could not have started the fire. Upthegrove, however, testified that he was present when the investigators themselves removed the plug from the socket and testified that they found the cord in an area in which the floor had been nearly burnt through, suggesting that the cord may have been near a site of ignition.

The jury could have accepted Upthegrove's testimony and determined that the cord was found near an area of accidental ignition, that Lumbermans' investigators lied about whether the cord was unplugged, and inferred that the investigators intentionally discarded the cord because they knew it might have exonerated Upthegrove.

Additionally, while Lumbermans' expert witness, Svare, testified that he had ruled out all accidental causes of the fire, including an electrical origin, he never saw the discarded lamp cord, and he made his analysis based on Miller's statement that the cord was unplugged at the time they found it. Upthegrove's own expert witness, Carlson, testified that the cause and origin of the fire were unknown and could not have been determined. He also testified that various chemical products ordinarily found in a hardware store could cause an accidental fire. Both experts were deprived of determining the cord's significance by Lumbermans' investigators' conduct.

Furthermore, there was sufficient evidence for the jury to conclude that some of the grounds articulated in Lumbermans' March 20, 1985, letter for denying Upthegrove's claim were false. This would have provided further support for a punitive damages award. In the letter, Lumbermans stated that it was denying the claim in part because Upthegrove's major

supplier, Hardware Hank, refused to extend further credit to Upthegrove. The letter also stated that Hardware Hank was in the process of opening a competing store in Upthegrove's market area.

For Lumbermans to believe that Upthegrove had set the fire, however, these events must have occurred before the fire. Yet at trial, a Hardware Hank representative denied refusing Upthegrove credit and stated that a decision to open a new store in the area was not made until after the fire, once it became clear that Upthegrove was not going to reopen his store in the near future.

We conclude that there was evidence from which the jury could have found that the denial of Upthegrove's claim was based on grounds that Lumbermans knew to be false, that Lumbermans' investigators knowingly destroyed potentially exonerating evidence, and that they lied about what they found in their investigation. Therefore, there was sufficient credible evidence for the jury's award of punitive damages.

Lumbermans argues that the result in *Benke v. Mukwonago-Vernon Mut. Ins. Co.,* 110 Wis. 2d 356, 329 N.W.2d 243 (Ct. App. 1982), requires us to reverse the punitive damage award. We disagree. In *Benke,* although the court affirmed the jury's bad faith finding, it determined that there was no evidence of malice or vindictiveness and reversed the punitive damage award. Here, evidence indicating that Lumbermans' investigators lied about what they found in their investigation and knowingly destroyed what might have been a crucial piece of evidence permitted the jury to conclude that Lumbermans did not have a good faith belief that the fire was caused by arson and that it acted with malice or ill will in investigating and

denying the claim. Because of this distinction, this result is not inconsistent with *Benke.*

Finally, Upthegrove cross-appeals the trial court's denial of his motion for prejudgment interest. Upthegrove argues that he is entitled to twelve percent interest pursuant to sec. 628.46(1), Stats.,[3] on the amount of the claim beginning on March 20, 1985, the day Lumbermans denied his claim. This is a mixed question of law and fact; while the basis for nonpayment of the claim is a question of fact, whether this basis is justifiable under the statute is a question of law. *See Janesville Community Day Care v. Spoden,* 126 Wis. 2d 231, 236–37, 376 N.W.2d 78, 81 (Ct. App. 1985). We conclude that given the jury's finding of bad faith, Lumbermans did not have a reasonable basis for denying Upthegrove's claim.

Section 628.46(1) constitutes an additional provision of the insurance contract incorporated into it as a matter of law. *Poling,* 120 Wis. 2d at 612, 357 N.W.2d at 298. The only way an insurer can avoid an interest assessment under sec. 628.46(1) is when it had reason-

---

[3]Section 628.46(1) provides:

Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. . . . Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. . . . All overdue payments shall bear simple interest at the rate of 12% per year.

able proof that it was not responsible for the payment. *Id.* at 613, 357 N.W.2d at 298–99.

Lumbermans denied the claim because it alleged that Upthegrove had set the fire for financial reasons. Yet the jury found not only that Upthegrove did not set the fire, but that Lumbermans acted in bad faith with respect to Upthegrove's claim. Under these facts, it would be inconsistent for us to affirm the jury's finding of bad faith while at the same time saying that Lumbermans had a reasonable basis for denying Upthegrove's claim.

We conclude that Lumbermans failed to meet the reasonable proof standard articulated in sec. 628.46(1). Therefore, we reverse the trial court's denial of interest on this issue. We remand with directions that the trial court enter an order awarding Upthegrove twelve percent interest on the amount of its claim, excluding punitive damages, running from March 20, 1985.

*By the Court.*—Affirmed in part, reversed in part, and cause remanded with directions.