Curtis D. RADFORD and C. Scott Radford, Plaintiffs-Respondents,

v.

J.J.B. ENTERPRISES, LTD., Milwaukee Marine, Inc., and James J. Bisenius, Jr., Defendants-Third-Party Plaintiffs-Appellants,†

v.

BOAT WORKS, INC., a Wisconsin corporation, and American States Insurance Company, a foreign corporation, Third-Party Defendants.

Court of Appeals

*No. 90-0994. Submitted on briefs January 2, 1991.—Decided May 1, 1991.*

(Also reported in 472 N.W.2d 790.)

†Petition to review denied.

535

538

On behalf of the defendants-third party plaintiffs-appellants, the cause was submitted on the briefs of *Thomas D. Kuehl* of *Bihler & Kuehl, S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Philip A. Munroe* of *Di Renzo & Bomier* of Neenah.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J. In this case, a jury found that the defendants intentionally misrepresented the soundness of a boat's hull during a sales transaction, thus violating sec. 100.18, Stats. It awarded compensatory and punitive damages. The trial court then awarded attorney's fees. The defendants appeal.

We conclude that the evidence was sufficient to support the jury's verdict of intentional misrepresentation. We hold that punitive damages and attorney's fees can be awarded when the basis is joint and several liability. Additionally, we hold that the prevailing party in the appeal of a case for intentional misrepresentation is entitled to appellate attorney's fees. We also conclude that the trial court correctly refused to submit a special verdict to the jury concerning the comparative negligence of the third-party defendant because the tort of intentional misrepresentation excludes a defense of contributory negligence. Therefore, we affirm the judgment and order of the trial court, but we remand to the circuit court for a determination of reasonable appellate attorney's fees.

In March 1986, Curtis and C. Scott Radford bought a 1954 wooden cabin cruiser from J.J.B. Enterprises, Ltd. (J.J.B.), a retail boat business at Milwaukee Marine, Inc. (Milwaukee Marine). The Radfords hired Milwaukee Marine to restore the boat.

The Radfords were looking for a used boat without dry rot. Scott Fischer, an employee of J.J.B., showed them the boat and told them all the dry rot was removed from the hull. During the purchase negotiations, the Radfords met with James Bisenius, Jr., who told them the hull of the boat was sound. Bisenius once owned the boat. He was also the president and sole owner of J.J.B. and the president and fifty percent shareholder of Milwaukee Marine.

The Radfords purchased the boat for $28,500. The Yacht Purchase Agreement contained a crossed-out disclaimer of warranties and promised delivery of the boat on July 4, 1986. When the defendants failed to meet the delivery date and charged the Radfords a winter storage fee, the Radfords entered into a new purchase agreement to include the storage fee in the price of the boat and to

specify a new delivery date. The new agreement listed the purchase price as $30,397.56, contained a disclaimer of warranties and promised delivery on April 1, 1987. Both purchase agreements contained the following provision: "[v]essel is to be completely restored and in the water and running subject to the approval of the buyers . . .."

Besides the purchase price paid to J.J.B., the Radfords also paid Milwaukee Marine $10,000 for the boat restoration. Additionally, they spent $30,262.54 for personalized and custom-designed additions to the boat.

Before delivery, the Radfords had the boat appraised by a marine surveyor. He stated the boat's value at $45,000 but cautioned that there were several areas of dry rot still to be repaired.

Delivery of the boat was first attempted in July 1987 in Milwaukee. With the Radfords' approval, the boat was outfitted with oversized propellers because computer-designed propellers were still on order. On the boat's first outing, the propeller shafts broke. They were repaired in Milwaukee and the boat was delivered to the Radfords in August 1987 at Sturgeon Bay, Wisconsin.

On the trip from Sturgeon Bay to Oshkosh, the boat windows leaked when it rained, the starboard shaft became unattached from the engine, and the port engine vibrated badly. Subsequently, the Radfords were able to take only two short trips on the boat. On the first trip, the port engine vibrated badly. On the second, the port shaft came undone from its engine. Until the boat was removed from the water, the bilge pump ran constantly to deal with leaks of large amounts of water. The pump could not keep up with the leaks and the boat eventually settled to the channel bottom in its slip at the marina of Boat Works, Inc. The water came up to the floor boards

in the back cabin. In November 1987, Boat Works removed the water and put the boat in storage.

The Radfords wrote several letters to Bisenius outlining the problems and asking him to send workmen to Oshkosh to correct them. In December 1987, the Radfords informed Bisenius that they would initiate a lawsuit unless Milwaukee Marine bought the boat back for $50,000.

The Radfords' suit was an action for intentional misrepresentation against all three defendants and an action for breach of warranty against J.J.B. The Radfords alleged that at the time of sale, the defendants claimed all the dry rot was removed from the hull and the hull was in a sound and seaworthy condition.

The defendants denied these allegations and filed a third-party complaint against Boat Works and its insurer, alleging negligence in the maintenance and storage of the boat at Boat Works in Oshkosh. Before trial, the Radfords signed a *Pierringer* release with Boat Works. *See Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963). The Radfords thereby relieved Boat Works of all liability and agreed to indemnify Boat Works for any claims made by others.

The jury's liability verdict found that all three defendants intentionally misrepresented the soundness of the boat's hull to the Radfords. The jury also found that the two corporate defendants, but not Bisenius, claimed all the dry rot was removed from the hull. The jury further found that the boat could be fully restored to a safe and seaworthy condition.

The damages found by the jury in the misrepresentation cause of action were $14,602.44 for benefit of the bargain, $30,440.98 for consequential damages and $6000 for punitive damages. The damage verdict for breach of warranty was $38,000. The trial court entered

a judgment for $51,043.42 on the misrepresentation verdict, plus attorney's fees of $41,569.67, litigation costs of $5,792.57 and interest. The court denied the defendants' motion for a default judgment against Boat Works and for contribution from the Radfords.

## SUFFICIENCY OF THE EVIDENCE

The defendants challenge the sufficiency of the evidence in several areas.[1] They argue that there was insufficient evidence to prove intentional misrepresentation, to establish that Bisenius had an economic interest in the transaction, or to support the damage awards for misrepresentation and breach of warranty.

We will not upset a jury verdict if there is any credible evidence to support it. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). This is even more true when the trial court gives its explicit approval to the verdict by considering and denying postverdict motions. *See id.* The credibility of the witnesses and the weight afforded their individual testimony are left to the province of the jury. *Id.* Where more than one reasonable inference may be drawn from the evidence adduced at trial, this court must accept the inference that was drawn by the jury. *Id.* at 305-06, 347 N.W.2d at 598. It is this court's duty to search for credible evidence to sustain the jury's verdict, and we are not to search the record for evidence to sustain a verdict the jury could have reached but did not. *Id.* at 306, 347 N.W.2d at 598.

[1]While we address the defendants in the plural, we note that all defendants are represented by one attorney and many of the arguments are made on Bisenius' behalf alone.

The defendants claim the evidence was insufficient to prove that their statements to the Radfords regarding the boat's hull were misrepresentations. The defendants contend the representations were statements of opinion and "sales puffery," and were promises of future performance rather than statements of fact. The defendants also argue that the Radfords negligently relied on these statements.

The jury found that all three defendants represented the boat as having a sound hull. Yet, the boat leaked from the time the Radfords received it, and it eventually settled to the channel bottom at Boat Works marina. Thus, there is credible evidence to support the conclusion that all three defendants made a material misrepresentation relating to the fundamental ability of the boat to be operated safely. A representation is material if a reasonable person would attach importance to the existence of the matter or if the maker knows or has reason to know that the recipient regards it as important. *See Restatement (Second) of Torts* sec. 538 (1977). It is hard to imagine a representation more important to a prospective boat owner than soundness of the boat's hull. Bisenius' participation in this fundamental misrepresentation is not mitigated by the jury's finding that Bisenius did not also represent the hull as having all the dry rot removed.

The defendants' representations were not mere opinion, "sales puffery" or promise of future performance. They were affirmative representations of actual facts. They spoke to the condition of the boat as it existed during the purchase negotiations between the parties prior to the signing of the original purchase agreement. The hull of the boat was not like the white

liquor clarifier in *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.,* 153 Wis. 2d 589, 594, 451 N.W.2d 456, 459 (Ct. App. 1989), where the sales negotiations concerned the future manufacture of the clarifier and involved statements about the clarifier's quality. In contrast, the sales statements about the boat's hull concerned the fundamental element that makes a boat a boat, rather than the qualitative merit of the hull. The defendants' reliance on *Consolidated Papers* is therefore misplaced.

The evidence also supports the jury's finding that the defendants intended to defraud the Radfords. The extent of the dry rot in the boat and the existence of several cracked ribs allow for a reasonable inference that the defendants knew about the condition, especially since Bisenius once owned the boat and Fischer was already working on the boat's restoration when the Radfords bought it. Moreover, the evidence showed efforts to conceal problems with the boat. Body putty was put directly on top of dry rot. The putty was even sculpted to resemble wood planks and then painted. New planks of wood were fastened to cracked and rotten wood. A jury could infer it to be inconceivable that someone could attach the new wood to the defective frames without noticing the defects themselves.

A jury could also infer the Radfords' reliance on the misrepresentations to be reasonable. The hull's defects were hidden and could not reasonably be detected until the boat was put in the water. Moreover, the jury could also decide that the Radfords' contractual right to approve the quality of the restoration before delivery was clouded by the fraudulent misrepresentation at the time of sale.

545

The defendants contend there is insufficient evidence to establish that Bisenius had an economic interest in the transaction. They claim that his position as an officer and shareholder in both corporations constituted a nexus too remote to establish an economic interest, especially since the Radfords paid no consideration directly to him. However, the requirement for an economic interest is relevant only to a strict responsibility claim. *See Reda v. Sincaban,* 145 Wis. 2d 266, 268–69, 426 N.W.2d 100, 102 (Ct. App. 1988). A cause of action for misrepresentation can be based on intent, negligence or strict responsibility. *Id.* at 268, 426 N.W.2d at 102. The cause of action in this case is for intentional misrepresentation. The argument has no relevance here.

The defendants complain that there was insufficient evidence to support the jury's award of damages. They question the credentials of the plaintiffs' witnesses regarding the boat's salvage value of $2500. However, from our reading of the record and our mathematical calculations, we find no evidence that the jury considered the boat's salvage value in computing damages. Otherwise, the benefit of the bargain damages would have been much higher.

We conclude that to arrive at the benefit of the bargain damage award of $14,602.44, the jury subtracted the boat's purchase price of $30,397.56 from the $45,000 appraised value. The jury's calculation was an obvious attempt to follow Wis J I—Civil 2405. The comment to that instruction defines "benefit-of-the-bargain" as "the difference between the value of the property as it was when purchased and what the value would have been if it had been as represented."

A plaintiff is also entitled to consequential damages in a suit for intentional misrepresentation. *See Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 53, 288 N.W.2d 95, 113 (1980). There is ample evidence to support the jury's verdict of $30,440.98 for consequential damages. The Radfords produced complete and detailed evidence that they spent a total of $70,661.10 on the boat. The jury's award is well within the boundaries of this evidence in deciding what portion of that $70,661.10 was recoverable through the fault of the defendants.

The defendants claim the evidence is insufficient to support a breach of warranty verdict because the second Yacht Purchase Agreement excluded all warranties, even though the first purchase agreement crossed out the warranty disclaimer. However, the Radfords testified there was no discussion about excluding warranties and the failure to cross out the disclaimer of warranties on the amended contract was simply an oversight. Furthermore, the Radfords provided notice of breach of warranty within a reasonable time. They first wrote to Bisenius shortly after their problem-filled voyage from Sturgeon Bay to Oshkosh.

The defendants argue that a new trial is warranted because the breach of warranty verdict is inconsistent with the misrepresentation verdict. However, the trial court's judgment did not include damages from both verdicts but only from the misrepresentation verdict.

## JOINT AND SEVERAL LIABILITY

The second issue raised is whether the law permits punitive damages and attorney's fees to be awarded on the basis of joint and several liability. This presents a

question of law which we review *de novo. First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

At trial, the defendants requested a separate special verdict question on damages for each of the defendants. Instead, the court submitted to the jury separate liability questions for each defendant, but only one damage question applied to the defendants jointly. The defendants argue that it was improper to impose joint punitive damages on the defendants because punitive damages are the result of individual culpability. Moreover, they contend that Bisenius was less culpable than the other two defendants because the jury found that Bisenius only misrepresented the soundness of the boat's hull but did not also claim that all the dry rot was removed.

We hold that punitive damages were properly assessed on a joint basis. Our supreme court has stated that punitive damages may be awarded against joint tortfeasors. *Meke v. Nicol,* 56 Wis. 2d 654, 658, 203 N.W.2d 129, 132 (1973). Punitive damages may not be awarded against joint tortfeasors where a plaintiff cannot prove which defendant actually caused the damages. *Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 202, 342 N.W.2d 37, 54, *cert. denied sub nom. E.R. Squibb & Sons, Inc. v. Collins,* 469 U.S. 826 (1984). Additionally, some type of aggravated conduct must be a component of the tort to justify punitive damages. *See Walter v. Cessna Aircraft Co.,* 121 Wis. 2d 221, 227, 358 N.W.2d 816, 819 (Ct. App. 1984).

Here, the jury found that each defendant intentionally misrepresented the soundness of the boat's hull. Thus, each defendant is equally culpable of misrepresenting the condition of the boat and thereby inducing the Radfords to purchase it. Moreover, the jury also

found that each defendant made the misrepresentation either knowing it was untrue or recklessly without caring whether it was true or untrue. This finding shows there was an aggravated component to the misrepresentation of each defendant.

That Bisenius was found by the jury not to have made a statement about the dry rot is irrelevant to the question of whether he should be jointly liable for punitive damages. He did make a fraudulent misrepresentation just the same. As president of the two defendant corporations, he is in the best position of the three defendants to insure that such misrepresentation does not occur again in the future. Punitive damages have a deterrent function as well as a punitive function. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 697, 271 N.W.2d 368, 379 (1978). Thus, punitive damages were properly assessed against Bisenius.

The defendants also complain that attorney's fees were awarded on the basis of joint and several liability. Since the defendants are jointly liable for the compensatory and punitive damages, we hold that they are similarly liable for the attorney's fees and costs awarded under sec. 100.18(11)(b)2, Stats.

The defendants also argue that the attorney's fees should be reduced because the fees include charges for presenting arguments of the plaintiffs that were not sustained by the jury. The defendants argue that they should not have to pay for the substantial amount of the plaintiffs' attorney's time spent on proving Bisenius' misstatements as to dry rot and proving that restoration of the boat was impossible. This is because the jury explicitly found that Bisenius did not claim all the dry rot was removed from the hull, and that the boat could

be fully restored to a safe and seaworthy condition as the defendants represented.

We hold that the entire amount of the plaintiffs' attorney's fees was properly assessed against the defendants. Under federal law, the losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith. *See Hensley v. Eckerhart,* 461 U.S. 424, 435–36 (1983); *Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1356–57 (11th Cir. 1983). This rule is particularly applicable where, as here, all of the plaintiffs' claims arise out of a common core of facts. *See Krodel v. Young,* 576 F. Supp. 390, 396 (D. D.C. 1983), *aff'd on other grounds,* 748 F.2d 701 (D.C. Cir. 1984), *cert. denied,* 474 U.S. 817 (1985).[2]

---

[2]The same facts were used by the Radford's attorney to prepare both the successful and the unsuccessful arguments in the main litigation. Thus, this case is distinguishable from *Chmill v. Friendly Ford-Mercury,* 154 Wis. 2d 407, 417–18, 453 N.W.2d 197, 201 (Ct. App. 1990) and *Footville State Bank v. Harvell,* 146 Wis. 2d 524, 540, 432 N.W.2d 122, 130 (Ct. App. 1988).

In *Chmill,* this court denied Chmill's attorney's fees for an unsuccessful garnishment action which was separate from the main action. The successful issues occurring under the "lemon law" were not interwoven with attorney labor on the garnishment. In *Footville,* the claim was that unless a customer "prevails" on all issues, he or she is not entitled to any attorney fees. We rejected that argument and held that since the customer prevailed on a distinct issue (preverdict interest liability), he was entitled to attorney fees in connection with that "successful defense." It is obvious, therefore, that the attorney labor for that defense was easily separable since facts relating to preverdict interest were not interwoven with attorney labor on the rest of the customer's litigation.

A different issue regarding attorney's fees is raised by the Radfords. They ask us to remand the case to the trial court for an award of appellate attorney's fees pursuant to sec. 100.18(11)(b)2, Stats., and *Shands v. Castrovinci,* 115 Wis. 2d 352, 340 N.W.2d 506 (1983). *Shands* held that a tenant who prevails on appeal is entitled to reasonable appellate attorney's fees under sec. 100.20(5), Stats. *Shands,* 115 Wis. 2d at 361, 362, 340 N.W.2d at 510, 511. We similarly hold that a party who prevails on appeal in an intentional misrepresentation case brought under sec. 100.18 is likewise entitled to reasonable appellate attorney's fees. Section 100.18(11)(b)2 contains the same mandatory language that *Shands* found persuasive in sec. 100.20(5). Moreover, the purposes and policy interests of both statutory sections are the same—namely, encouraging plaintiffs to enforce their rights, despite the high costs of litigation, and thus deter intentional misrepresentations or unfair practices in business and trade. We remand to the trial court for a determination of reasonable appellate attorney's fees.

## THIRD-PARTY DEFENDANT

The defendants complain that the court did not submit a question to the jury concerning any damage to the boat resulting from the negligence of Boat Works, the third-party defendant. The trial court also denied the defendants' default motion against Boat Works at the close of trial.

The trial court correctly excluded from the jury's consideration any question on negligence in the handling and storage of the boat by Boat Works. The liability of a

defendant in a suit for intentional misrepresentation is not based on negligence. Therefore, there can be no defense of contributory negligence. The misrepresentation found by the jury occurred at the time of the boat's sale, well before the boat ever docked at Boat Works marina. Additionally, we concluded above that the jury's damage verdict did not consider the salvage value of the boat. Therefore, any negligence of Boat Works was irrelevant to reduce the damage judgment.

*By the Court.*—Judgment and order affirmed and cause remanded with directions.