Nellie POLING and Howard Poling, Plaintiffs-Respondents,

v.

WISCONSIN PHYSICIANS SERVICE, Defendant-Appellant.†

Court of Appeals

No. 83–2389. Submitted on briefs July 9, 1984.—
Decided September 18, 1984.
(Also reported in 357 N.W.2d 293.)

† Petition to review denied.

604

For the appellant the cause was submitted on the briefs of *John A. Casey, Mary Pat Ninneman* and *Quarles & Brady* of Milwaukee.

For the respondents the cause was submitted on the brief of *C.M. Bye* and *Bye, Krueger & Goff, S.C.,* of River Falls.

Before Foley, P.J., Dean and Nettesheim, JJ.

NETTESHEIM, J. Wisconsin Physicians Service, administrator of the state of Wisconsin's employee group

health insurance policies, appeals from that portion of the judgment affirming a jury verdict finding bad faith by WPS in refusing to honor Howard and Nellie Poling's claims for nursing home care rendered to Mrs. Poling. The jury awarded bad faith damages of $35,000 and punitive damages of $100,000 in favor of the Polings. The jury also awarded the Polings $33,000 damages for breach of contract damages representing nursing home charges incurred by Mrs. Poling. WPS does not appeal this breach of contract award, but does appeal the award of twelve percent prejudgment interest on said amount. WPS also appeals the award of prejudgment interest on the bad faith and punitive damage awards. We vacate the award of prejudgment interest on the bad faith and punitive damage awards. In all other respects, we affirm the judgment.

Mrs. Poling is a retired state employee. She was insured under a group health insurance policy issued by the state of Wisconsin and administered by WPS. She was admitted to a hospital on August 5, 1981, suffering from early senility (Alzheimer's Syndrome) and Parkinson's Disease. She was then directly admitted to the Kinnic Nursing Home on August 13, 1981.[1] In March 1982, Mr. Poling submitted a claim to WPS for reimbursement of the nursing home charges incurred by Mrs. Poling. After referring the claim to its medical advisors, WPS concluded that the care provided was custodial, not skilled, and therefore not covered under the policy. Mr. Poling then sought legal assistance. On May 18, 1982, the Polings' attorney resubmitted the claim together with a letter from Dr. Roland Hammer, who had originally admitted Mrs. Poling to the hospital. Dr. Hammer, contend-

[1] This satisfied the initial prerequisite for coverage under the policy requiring admission to a nursing home within fourteen days of discharge from a hospital for the continued treatment of the same condition.

ing that Mrs. Poling's care was skilled, noted that she was being monitored to avoid the development of bed sores and that occupational therapy, nursing supervision, and medication were being provided. WPS submitted this further request and information to its medical advisors who again concluded that Mrs. Poling's care was custodial. The claim was again denied. This lawsuit ensued.

## Bad Faith

WPS contends that there was no evidence to support the finding of bad faith. The test for determining whether an insurance company has committed a tortious bad faith refusal to honor a claim of an insured is stated in *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368, 376 (1978), as follows:

To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

WPS argues that Mrs. Poling's claim was fairly debatable and that it gave honest and intelligent consideration to it with knowledge of her circumstances. Thus, WPS asserts it denied the claim in good faith.

However, at trial, WPS abandoned its claim that Mrs. Poling was receiving only custodial care and conceded that she was receiving skilled care. WPS contended, however, that because Mrs. Poling was not receiving habilitative care, which would not be covered by Medicare provisions, her claim still was not covered. WPS's claims director and principal witness, William Toole, explained that WPS coverage was the same as that provided by Medicare coverage. However, Toole was seriously impeached when it was revealed that the Medicare provi-

sions decreed that the patient's need for skilled care, rather than the expectation of rehabilitation, was the controlling factor in determining coverage. Toole was further seriously impeached when he testified that WPS's June 1982 denial of the Poling claim was based on Dr. Hammer's report. The report, in fact, was not prepared until August 24, 1982.

On review of a jury verdict, we view the evidence in the light most favorable to the verdict and uphold it if there is any credible evidence to support it. *Meurer v. ITT General Controls,* 90 Wis. 2d 438, 450, 280 N.W.2d 156, 162 (1979). This is especially true where, as here, the verdict has the approval of the trial court. *Id.* Matters of weight and credibility are left to the jury's judgment, and where more than one reasonable inference can be drawn from the evidence, this court must accept the inference drawn by the jury. *Id.* This court is obligated to search for credible evidence that will sustain the verdict, not for evidence that would sustain a verdict the jury could, but did not, reach. *Id.* at 450–51, 280 N.W.2d at 162–63.

While an insurance company may challenge claims that are "fairly debatable" and will be found liable in bad faith only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis, the test is whether a reasonable insurer under the particular facts and circumstances would have denied or delayed payment of the claim. *Anderson,* 85 Wis. 2d at 692, 271 N.W.2d at 377. It is the duty of an insurer to assess a claim as a result of an appropriate and careful investigation so that its conclusions should be the result of the weighing of probabilities in a fair and honest way. *Id.* at 688, 271 N.W.2d at 375; *see also Hilker v. Western Automobile Insurance Co.,* 204 Wis. 1, 15, 231 N.W. 257,

235 N.W. 413, 415 (1931) (opinion on reconsideration). Such a decision, in order to be made in good faith, must be based upon a knowledge of the facts and circumstances upon which liability is predicated and the lack of reasonable diligence to determine the nature and extent of the liability evinces bad faith. *Anderson,* 85 Wis. 2d at 688, 271 N.W.2d at 375.

WPS's retreat at trial from its previous position that Mrs. Poling's care was custodial presents a sufficient basis for the jury to have concluded that WPS did not properly investigate the Poling claim with respect to its potential liability. The fact that the denial of the claim was based upon Mrs. Poling's doctor's report, when such report was not prepared until much later, further discredits WPS's claim of reasonable action. Therefore, WPS had no basis upon which to conclude that the claim was fairly debatable, and thus there was no reasonable basis for denying the claim. Accordingly, the first prong of the *Anderson* test was met.

In addition, the presentation, for the first time at trial, of a new basis for denial of the claim, coupled with the revelation that even this new theory was inapplicable under the Medicare guidelines, not only supports the finding under the first *Anderson* prong but further supports the claim that WPS acted at least in wanton disregard of its duty to the Polings, thus meeting the second *Anderson* prong.

WPS next argues there was no evidence to sustain the award of bad faith damages. *Anderson* requires a plaintiff seeking bad faith damages to prove emotional distress *and* substantial damages other than those attributable to the breach of contract. As to the claim of emotional distress, Dr. Hammer corroborated Mr. Poling's testimony about the anxiety experienced by Mr. Poling attempting

to meet apparently interminable nursing home charges with finite savings intended to support the Polings' retirement years. Dr. Hammer prescribed medication for Mr. Poling to combat this depression. No evidence to the contrary was presented. As such, sufficient evidence existed upon which the jury could premise its finding of emotional distress.

As to the claim of "substantial other damages," Mr. Poling testified that he steadily depleted his personal assets and life savings for the continued care of his wife. As a result, Mrs. Poling sought public welfare medical assistance. This evidence suffices as a sufficient basis upon which the jury could find substantial other damages aside from the emotional distress itself.

WPS next argues that Mr. Poling lacked standing to claim bad faith against WPS since he is not an insured under the contract. This issue, however, is raised for the first time on appeal. WPS did not object to the verdict, which contained questions stating the claims of the Polings and their request for damages as joint claimants.[2] Matters argued for the first time on appeal and not raised in the trial court are deemed waived. *Dairyland Equipment Leasing, Inc. v. Bohen,* 94 Wis. 2d 600, 605–06, 288 N.W.2d 852, 854 (1980).[3]

---

[2] We acknowledge that Mr. Poling was named as an added plaintiff on the opening day of trial and that the basis for this action was his responsibility for Mrs. Poling's medical bills. Nonetheless, WPS did not object to the verdict questions inquiring as to the amount of money to be awarded to both Nellie and Howard Poling.

[3] Even if we were to countenance this issue, we would reject WPS's argument. The policy specifically includes the subscriber's spouse as an eligible dependent. In addition, prior to trial, the parties stipulated that the policy was in full force and effect for Howard and Nellie Poling. Finally, strong arguments can be

## Punitive Damages

"Reckless indifference to the rights of others and conscious action in deliberate disregard of them . . . may provide the necessary state of mind to justify punitive damages." *Fahrenberg v. Tengel*, 96 Wis. 2d 211, 221, 291 N.W.2d 516, 521 (1980), quoting Restatement (Second) of Torts § 908 comment b (1977). To recover punitive damages, the injured party need only show a wanton, willful or reckless disregard for the rights of others on the part of the wrongdoer. *Id.* In the context of a bad faith action, the plaintiff must show "an evil intent deserving of punishment or of something in the nature of special ill-will or *wanton disregard of duty* or gross or outrageous conduct." *Anderson*, 85 Wis. 2d at 697, 271 N.W. 2d at 379 (emphasis added). Here again, WPS's waffling as to the grounds for its denial, the incorrectness of the ground ultimately selected, and the serious impeachment of its principal witness, Toole, serves to adequately support a finding of wanton disregard of its duty to the Polings. The award of punitive damages is affirmed.

## Interest

The Polings concede that the award of prejudgment interest on the bad faith and punitive damage awards is inappropriate. The judgment is modified to eliminate interest on these awards.

The trial court awarded the Polings prejudgment interest on the breach of contract award at the rate of twelve

made for Howard's status as a third-party beneficiary of the contract. The policy reasons refusing coverage to a third party as stated in *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis. 2d 56, 307 N.W.2d 256 (1981) (no bad faith recovery to a non-insured), are not present in the instant case.

percent per annum pursuant to the provisions of sec. 628.-46(1), Stats. The statute provides that insurance claims shall bear interest at the rate of twelve percent per annum if not paid within thirty days after the insurer is furnished written notice of the fact and amount of the covered loss.[4]

WPS correctly cites *Benke v. Mukwonago-Vernon Mutual Insurance Co.,* 110 Wis. 2d 356, 368–69, 329 N.W.2d 243, 249–50 (Ct. App. 1982), for the proposition that prejudgment interest should accrue at the rate of five percent rather than twelve percent. *Benke,* however, did not discuss the effect of sec. 628.46(1), Stats. The statute is an additional provision of the insurance contract incorporated into it by operation of law. *Anderson,* 85 Wis. 2d at 696, 271 N.W.2d at 379. We see nothing in the statute, or in the obvious policy behind it, which conditions its application on the reasons why an insurer denies or delays

---

[4] Section 628.46(1), Stats., provides:

Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. For the purpose of calculating the extent to which any claim is overdue, payment shall be treated as being made on the date a draft or other valid instrument which is equivalent to payment was placed in the U.S. mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery. All overdue payments shall bear simple interest at the rate of 12% per year.

payment of a claim. The only escape clause for avoidance of this interest assessment is when the insurer has reasonable proof that it is not responsible for the payment. This statute is unrelated to the tort of bad faith and permits the imposition of interest even where bad faith is not present. *Id.* WPS argues that the statute only applies to cases of delayed payment not denied claims. We disagree. Such an interpretation would permit the application of the statute in non-bad faith cases but prohibit it in the egregious cases where bad faith has been proven. This would be an absurd application of the statute, which is to be avoided. *State Central Credit Union v. Bigus,* 101 Wis. 2d 237, 242, 304 N.W.2d 148, 151 (Ct. App. 1981).

Last, WPS asks for a new trial in the interest of justice. We are not satisfied, however, that a probable miscarriage of justice has occurred. The test is not whether a different result is possible if a new trial is held, but rather whether there is a substantial probability of a different result. *Badger Bearing, Inc. v. Drives & Bearings, Inc.,* 111 Wis. 2d 659, 676, 331 N.W.2d 847, 856 (Ct. App. 1983). We are satisfied that all issues were fully and fairly tried. We therefore cannot conclude that WPS would probably fare better.

*By the Court.*—Judgment modified and as modified, affirmed.