In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2210

MEGAN DANIELS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNITED HEALTHCARE SERVICES, INC. and
UNITED BEHAVIORAL HEALTH,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:19-cv-01038 — **William M. Conley**, *Judge*.

———————————

ARGUED FEBRUARY 22, 2023 — DECIDED JULY 17, 2023

———————————

Before HAMILTON, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Plaintiffs Megan, Chris, and Betsy
Daniels allege United HealthCare[1] wrongly denied insurance

---

[1] The Daniels sued both United HealthCare and United Behavioral
Health. United HealthCare is the named entity on the Summary Plan Description, but correspondence regarding Megan's mental health coverage

coverage for mental health services. The district court dismissed each of plaintiffs' claims, including for breach of contract, bad faith, punitive damages, and statutory interest for late payments. Because Wisconsin law does not permit the Daniels to bring these claims against United HealthCare, we affirm the judgment of the district court.

## I. Background

Plaintiffs Chris and Betsy Daniels work for South Milwaukee School District. Through the School District, the Daniels contracted for a health insurance plan entitled "School District of South Milwaukee Choice Plus Plan 1" ("the Plan").[2] The School District, per the Summary Plan Description, "self-funds" the Plan. This means the School District, not an outside insurer, bears sole financial responsibility for payment of Plan benefits. The School District is also the Plan administrator and named fiduciary. For help with day-to-day Plan operation, the School District contracted with United HealthCare to serve as the Plan's third-party claims administrator. In that role, United HealthCare has responsibility and authority to deny or approve claims but is not financially liable for paying benefits—that obligation remains with the School District. United HealthCare thus has no contractual relationship with Plan participants. We understand this arrangement to be common in the industry.

---

came from United Behavioral Health. Because any distinction between the two entities is immaterial to our analysis, we refer to the defendants collectively as United HealthCare.

[2] The Daniels's plan is a governmental plan, so the Employee Retirement Income Security Act does not control. 29 U.S.C. § 1003(b)(1).

The contours of the Daniels's health insurance coverage took on new importance in 2017, when Megan Daniels—Chris and Betsy's daughter covered under her parents' policy—suffered a mental health emergency. Chris and Betsy sought inpatient mental health treatment for Megan and enrolled her in the Nashotah Program at Rogers Memorial Hospital. As claims administrator, United HealthCare approved Megan for a total of 24 days of inpatient treatment. It then informed the Daniels that it would not approve additional days. Both the Daniels and Megan's doctors disagreed with this coverage decision, so they appealed internally within United HealthCare. In the meantime, the Daniels elected to continue Megan's inpatient treatment. The appeals proved fruitless, and the Daniels received a final denial of coverage notice in May 2017. All in, United HealthCare approved payment for $30,755.33 of Megan's treatment which, according to the Daniels, left most of Megan's treatment expenses uncovered.

The Daniels turned next to Wisconsin state court, filing a complaint against United HealthCare for breach of contract, bad faith, punitive damages, and interest under Wisconsin's prompt pay statute. At the time of that filing, it appears the Daniels were unaware of United HealthCare's comparatively limited role as a third-party claims administrator.

United HealthCare removed the case to federal court and, in January 2020, filed a motion to dismiss. Alongside that motion, United HealthCare submitted the Summary Plan Description for the Daniels's insurance policy. That document describes United HealthCare's role as a third-party claims administrator—not a Plan insurer. The Daniels amended their complaint in February 2020 and added United Behavioral Health to the suit. But, despite the Summary Plan Description

confirming that the School District—not United HealthCare—is the Plan guarantor, administrator, and fiduciary, the Daniels elected not to join the School District as a defendant.

United HealthCare filed a second motion to dismiss in March 2020, which the district court granted. The court could not identify a contractual relationship between the Daniels and United HealthCare, so it disposed of the Daniels's breach of contract claims. The court then examined whether Wisconsin law permits the Daniels to sue United HealthCare for tortious bad faith absent contractual privity. Answering in the negative, the court dismissed the Daniels's bad faith claims. That left just the Daniels's claims for statutory interest and punitive damages. The court dismissed both, ruling that Wisconsin's prompt pay statute applies only to insurers, and noting that punitive damages are a form of relief, not a standalone cause of action. The district court also elected to dismiss without providing plaintiffs another chance to amend because the Daniels were aware of all the relevant issues when they first amended their complaint. The Daniels appeal.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). At all times, we "accept[] as true all well-pleaded facts and draw[] reasonable inferences in [the Daniels's] favor." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quoting *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016)). Because we sit in diversity for this case, we apply Wisconsin law and make our best prediction of how the Wisconsin Supreme Court would resolve the issues presented. *See BMD Contractors, Inc. v. Fidelity & Deposit Co. of Md.*, 679 F.3d 643, 648 (7th Cir. 2012) (citation omitted);

*see also Thirteen Inv. Co., v. Foremost Ins. Co. Grand Rapids Mich.*, 67 F.4th 389, 392 (7th Cir. 2023) ("When faced with unresolved issues of state law, we must predict how the relevant highest state court would rule.") (citation omitted).

The Daniels concede on appeal they have "no direct contractual relationship with United Healthcare" and agree their breach of contract claims cannot proceed. So, we examine only the Daniels's claims for bad faith, statutory interest, and punitive damages, on which they seek reversal. We address bad faith first and the Daniels's other claims after that.

## II

The tort of bad faith in Wisconsin has developed through case law, with liability rules varying based on the type of insurance claim at issue and the parties involved. *Roehl Transp. Inc. v. Liberty Mut. Ins. Co.*, 784 N.W.2d 542, 551 (Wis. 2010); *see also* Wis. JI-CIVIL 2760 (2003); Wis. JI-CIVIL 2761 (2011). The tort generally addresses unfair handling of insurance claims. *Roehl Transport, Inc.*, 784 N.W.2d at 552. The central question here is whether, under Wisconsin law, a plaintiff may sue a defendant for bad faith absent contractual privity. If not, we must affirm dismissal of the bad faith claims.

The Daniels argue the tort of bad faith does not depend on contractual privity and contend the district court erred in reaching that conclusion. For the Daniels, "any party with responsibility for determining eligibility for 'insurance type' benefits" can be held liable for acting in bad faith. As support, the Daniels look to two areas of Wisconsin law. First, they rely on *Lueck v. Aetna Life Insurance Co.*, 342 N.W.2d 699 (Wis. 1984), for the rule that bad faith liability extends to agents of an insurer, like United HealthCare, that are involved in

administering benefits. Second, they direct us to Wisconsin Supreme Court decisions on bad faith in the worker's compensation context. Those cases, they assert, similarly show that the tort of bad faith applies to third parties who administer benefits, even if they lack contractual privity with the plaintiff.

United HealthCare disagrees with the Daniels's interpretation of precedent and seeks affirmance. Per United HealthCare, "[i]t is settled Wisconsin law that contractual privity is required to assert a bad faith claim." And Wisconsin law, says United HealthCare, makes no exception "for claims against a third-party administrator like [itself]."

We begin with the Wisconsin Supreme Court's decision in *Lueck*, situating it within the historical development of Wisconsin bad faith law and analyzing its impact. We then review bad faith claims in the worker's compensation context.

**A**

Our first task is to determine whether *Lueck* authorizes the Daniels's bad faith claims against United HealthCare. Understanding *Lueck*'s scope, and its relationship to other Wisconsin bad faith case law, requires some background.

Before *Lueck*, the Wisconsin Supreme Court had expressly authorized three main types of bad faith claims: "third-party" claims, "first-party" claims, and worker's compensation claims. *See Roehl Transport, Inc.*, 784 N.W.2d at 552. Third-party bad faith claims developed first, *id.*, and involve an insured suing an insurer for how the insurer managed a claim filed by someone not a party to the insurance policy. *See Hilker v. W. Auto. Ins. Co. of Fort Scott, Kan.*, 235 N.W. 413, 414–15 (Wis. 1931). A simple example is a car accident where a victim

seeks recovery from the tortfeasor and his insurer. The victim offers to settle the claim at or near the policy limit, but the insurance company refuses and takes the case to trial. There, the insurance company's interests have diverged somewhat from the insured's. The insurer's exposure is limited to the policy maximum, so it has comparatively little to lose by declining settlement and trying to win at trial. But the insured is responsible for any excess damages resulting from a large jury verdict. So, if the jury returns an award in excess of the policy limit, the insured may seek recovery from his insurer through a third-party bad faith claim. *See Roehl Transport, Inc.*, 784 N.W.2d at 553.

First-party bad faith claims, which the Wisconsin Supreme Court first authorized in *Anderson v. Continental Insurance Co.*, 271 N.W.2d 368, 374 (Wis. 1978), are more straightforward. They involve an insured suing its own insurer for its bad faith handling or denial of the insured's own claims. *Id.*; *Roehl Transport, Inc.*, 784 N.W.2d at 551 n.15. The final type, bad faith worker's compensation claims, arise within a statutory system designed to speedily compensate injured employees. *Roehl Transport, Inc.*, 784 N.W.2d at 559. We save discussion of worker's compensation claims for later and start with third- and first-party claims.

Early Wisconsin Supreme Court decisions recognizing third- and first-party bad faith claims grounded those claims in the contractual relationship between the insured and insurer. *See, e.g.*, *Hilker*, 235 N.W. at 414–15; *Anderson*, 271 N.W.2d at 374–76. For instance, when originally authorizing first-party bad faith claims in *Anderson*, the court explained tortious bad faith "results from a breach of duty imposed as a consequence of the relationship established by contract," *id.*

at 374, and arises out of the implied contractual duty of good faith and fair dealing. *See id.* at 375–76. So, contractual privity inhered to the first types of tortious bad faith claims in Wisconsin.

The Wisconsin Supreme Court's decision in *Lueck v. Aetna Life Insurance Co.*, followed shortly after *Anderson* and featured facts comparable to the Daniels's suit. 342 N.W.2d at 700–01. Plaintiff Lueck was a unionized employee who received health and disability insurance under a labor agreement with his employer. *Id.* Like the Daniels, Lueck's employer was responsible for paying plan benefits but outsourced plan administration to a third party, Aetna Life and Casualty Company. *Id.* at 701. After suffering an injury, Lueck sought disability benefits. But "for unexplained reasons" payment of Lueck's benefits was repeatedly interrupted. *Id.* Lueck sued his employer and Aetna for bad faith, claiming they "failed to pay disability benefits which they had no reasonable basis for denying." *Id.*

*Lueck* presented two related questions. First, because Lueck obtained his insurance through a labor agreement, the court had to determine whether federal labor law preempted his state law tort action. Second, it was unclear if Lueck could sue Aetna for bad faith, given that Aetna was a non-insurer plan administrator. Aetna argued that "as the administrator … it had no fiduciary duty to Lueck to deal in good faith on his disability claim and, therefore, could not be sued for bad faith." *Id.* at 701. Federal preemption consumed much of the Wisconsin Supreme Court's attention, with the court holding that federal law did not preempt Lueck's tort action. *Id.* at 703–07. The court then turned to Aetna's argument that it

could not be held liable for bad faith because of its limited role
as an administrator. On that issue, the court determined:

> By virtue of the contract between [Lueck's em-
> ployer] and Aetna, Aetna became [Lueck's em-
> ployer's] agent for purposes of administering
> [the] insurance contract with Lueck. … As such,
> Aetna stands in the same relationship with
> Lueck as [his employer does] and, therefore, has
> the same fiduciary duty as the primary insurer.

*Id.* at 708. The court held that an "administrator still may be
held liable if, in the administration of the claim, the adminis-
trator independently engages in conduct actionable under the
tort of bad faith." *Id.* In so deciding, the Wisconsin Supreme
Court appeared to weaken the need for a direct contractual
relationship in a bad faith claim, at least in comparison to *An-
derson*. Per *Lueck*, an insurer's contractual duty of good faith
extended to its agents involved in plan administration, mean-
ing Aetna—a non-insurer plan administrator—could be liable
for bad faith. *Id.* But events after *Lueck* undercut its impact on
this case.

The Supreme Court of the United States granted certiorari
in *Lueck*, reversed the Wisconsin Supreme Court's preemption
analysis, and ordered Lueck's action dismissed. *Allis-
Chalmers Corp. v. Lueck*, 471 U.S. 202, 219, 220–21 (1985). A U.S.
Supreme Court reversal often renders a state supreme court
decision obsolete. But while the U.S. Supreme Court rejected
the Wisconsin Supreme Court's federal law preemption dis-
cussion, it did not consider the question of Aetna's duties to
Lueck. Indeed, the U.S. Supreme Court noted "the [Wisconsin
Supreme Court] found that Aetna could be liable to Lueck for
bad-faith administration of his disability claim" but stated

"Aetna has not sought review of that part of the judgment."
*Id.* at 208. So, it is not clear if the Wisconsin Supreme Court's
holding in *Lueck* on bad faith retains precedential value after
the U.S. Supreme Court's partial reversal.

The Daniels argue *Lueck* controls and authorizes their bad
faith claims against United HealthCare. They contend that
United Healthcare, as the School District's agent,[3] owes them
the same fiduciary duties as the School District. But we view
*Lueck*'s current precedential value differently. Though *Lueck*
addressed a comparable set of facts to this case, its holding
does not reflect the current state of Wisconsin law. Even if
*Lueck*'s relevant holding survived the U.S. Supreme Court's
reversal, Wisconsin Supreme Court decisions in the decades
before and after *Lueck* have consistently limited bad faith lia-
bility to parties who are connected through contract or linked
by worker's compensation statutes. Wisconsin cases after
*Lueck* fail to mention it, despite featuring detailed reviews and
summaries of Wisconsin bad faith law.

Before *Lueck*, the Wisconsin Supreme Court limited bad
faith liability to parties linked through a contractual relation-
ship. *Anderson* exemplifies this rule and merits additional
mention. 271 N.W.2d at 374. There, the Wisconsin Supreme
Court clarified that first-party bad faith claims are cognizable
and that insureds may sue their insurer for bad faith handling
of their own claims. *Id.* In so holding, the court repeatedly em-
phasized the necessity of a contractual relationship for bad
faith liability: "By virtue of the relationship between the

---

[3] United HealthCare argues the Daniels waived their agency theory of
liability. Because the Daniels's arguments fail on their merits, we need not
reach the issue of waiver.

parties created by the contract, a special duty arises, the breach of which duty is a tort and is unrelated to contract damages." *Id.* Therefore, in its first case directly recognizing the tort of bad faith in the first-party context—where litigants like the Daniels seek recovery for bad faith handling of their own claim—the Wisconsin Supreme Court anchored the tort of bad faith within contractual privity.

Between deciding *Anderson* and *Lueck*, the Wisconsin Supreme Court also addressed bad faith liability in *Kranzush v. Badger State Mutual Casualty Co.*, 307 N.W.2d 256, 261 (Wis. 1981). There, a woman was injured when the car in which she was riding struck a pole. *Id.* at 257–58. She sued the driver (who was also her husband) and his insurer. *Id.* at 258. After delays in the case, the woman passed away. Her estate then filed a second suit against her husband's insurer for refusing, in bad faith, to settle the claim. *Id.* Both the state trial court and appellate court dismissed the complaint, reasoning a third-party claimant[4] could not pursue a claim of bad faith against another person's insurance company. *Id.* at 258–59. The Wisconsin Supreme Court affirmed. *Id.* at 270. "The insured's right to be treated fairly (and his recourse to the courts if he is not) is rooted in the contract of insurance to which he and the insurer are parties." *Id.* at 261. The court in *Kranzush* also "briefly review[ed]" the three contexts in which bad faith

---

[4] We recognize the risk for confusion between cases involving third-party claimants, such as *Kranzush*, and those involving third-party bad faith claims. Third-party claimants have no contractual relationship to the insurer. In the simplest scenario, a third-party claimant is a tort victim seeking payment from the tortfeasor's insurance. By contrast, a third-party bad faith claim is a claim brought by the insured party against his own insurer. In that scenario, the insured party complains of how *his insurer* handled a claim brought by a third party.

claims had been allowed to proceed. *Id.* at 259. Throughout that review, the Wisconsin Supreme Court invariably emphasized the link between the insurance contract and bad faith.

The court began by characterizing third-party bad faith claims. For those claims, "the insurer has an obligation to the insured to exercise good faith in the settlement of the claim." *Id*. That obligation "arises by virtue of the *contractual relationship* of the insurer and the insured." *Id*. (emphasis added). A third-party bad faith claim is therefore inextricably tied to the contractual relationship between the insured and insurer. *Kranzush* also describes first-party bad faith claims, authorized in *Anderson*, where insureds sued their insurer for bad faith handling of their own claim. *Id.* at 259–60. The Wisconsin Supreme Court tightly coupled those claims to contractual privity as well: "The heart of the tort recognized in *Anderson* is the fiduciary relationship between the insurer and the insured and the insurer's breach of the duty of good faith and fair dealing implicit in every contract." *Id.* at 261. The final category of bad faith claims reviewed in *Kranzush* relates to the worker's compensation and involves a statutory relationship we analyze later. *Id.* at 260.

As *Anderson* and *Kranzush* demonstrate, before *Lueck* the Wisconsin Supreme Court's discussion of first- and third-party bad faith claims limited liability to those parties in a contractual relationship.

After *Lueck*, Wisconsin Supreme Court cases return to requiring contractual privity for bad faith liability. In *Danner v. Auto-Owners Insurance*, 629 N.W.2d 159, 162 (Wis. 2001), the Wisconsin Supreme Court examined the tort of bad faith in a new context—underinsured motorist coverage. The Danners sought to collect on their underinsured motorist policy after a

car accident. *Id.* at 162, 164. The claim led to litigation, with the Danners eventually suing their insurer for bad faith. *Id.* at 166. Auto-Owners argued that underinsured motorist coverage should be treated differently for purpose of bad faith than other policies. It asserted that, because "the insurer is in an adversarial relationship with its insured" for purposes of underinsured coverage, it should not be held to a duty of good faith and fair dealing until liability has been conclusively determined. *Id.* at 168.

Faced with this question, the Wisconsin Supreme Court again reviewed the tort of bad faith: "To properly evaluate [the insurer's] arguments we must first examine the tort of bad faith in Wisconsin." *Id.* The court grounded its review in *Anderson*, writing "[o]ur decision in *Anderson* emphasized that a special duty between the parties arose *as a result of the relationship created by the contract*." *Id.* at 169 (emphasis added). That "special duty of good faith and fair dealing," said the court, "runs throughout the contract relationship between the insurer and the insured." *Id.* at 169–70. Based on this precedent, the court rejected Auto-Owners's attempt to limit the scope of its duty of good faith and fair dealing and reemphasized the connection between the tort and contract:

> We hold that every insurance contract from its inception has an implied covenant of good faith and fair dealing between the insured and the insurer. When this duty of good faith and fair dealing is breached, and the insured incurs damages as a result of that breach, a claim for bad faith will lie.

*Id.* at 171. Despite the court's expansive discussion of bad faith in *Danner*, it did not mention *Lueck*.

Less than a decade after *Danner*, the Wisconsin Supreme Court again considered the tort of bad faith in *Roehl Transport, Inc.*, 784 N.W.2d 542. There, the plaintiff purchased a policy with Liberty Mutual for its commercial trucks. *Id.* at 547–48. The policy provided up to $2 million in liability coverage but included a deductible of $500,000. *Id.* at 546. When one of Roehl Transport's trucks collided with a motorist, Liberty Mutual took over management of the claim. *Id.* at 546, 548. It allegedly did so haphazardly, resulting in a personal injury judgment for $830,400 against Roehl Transport. *Id.* at 548–49. Roehl Transport sued Liberty Mutual for bad faith, claiming it "missed the opportunity to settle the … claim for less than the full amount of Roehl Transport's $500,000 deductible." *Id.* at 549. Those facts presented a novel situation for the Wisconsin Supreme Court, as the final cost for the accident consumed Roehl Transport's entire deductible but fell within Roehl Transport's policy limit. The state supreme court was tasked with determining whether that gave rise to a bad faith claim.

The decision in *Roehl Transport, Inc.* began by broadly summarizing "the principles of the tort of bad faith," and emphasizing the connection between the tort and contractual privity. *Id.* at 552. As the Wisconsin Supreme Court described, "the tort of bad faith intrinsically relates to the nature and existence of the insurance contract. Because the duty is rooted in the contractual relationship, this court has refused to recognize a bad faith claim when a claimant was not in a contractual relationship with an insurance company." *Id.* at 553. The court similarly identified the source of the claim: "[T]he tort of bad faith is derived from the implied covenant of good faith and fair dealing found in every contract." *Id.*

After sketching the boundaries of bad faith in *Roehl Transport Inc.*, the Wisconsin Supreme Court "examine[d] the seminal Wisconsin bad faith insurance cases." *Id.* at 555. The resulting survey of state law is expansive and covers many types of bad faith claims, including in the first-party, third-party, and worker's compensation contexts. It begins in 1916 and addresses cases such as *Hilker* (1930), *Anderson* (1978), and *Kranzush* (1981). *Id.* at 555–61. Throughout, the Wisconsin Supreme Court reiterated "[t]he duty of good faith arises under the insurance policy and the contractual relationship formed between the insurance company and the insured." *Id.* at 560. Tellingly, despite the scope and depth of *Roehl Transport, Inc.*'s inquiry into "seminal" bad faith cases, the decision never mentions *Lueck*. We recognize that *Roehl Transport* dealt directly with a third-party claim and *Lueck* a first-party claim, but the Wisconsin Supreme Court's survey of tortious bad faith in *Roehl Transport, Inc.* is expansive. Indeed, the court characterized its work as a "study of the development of the doctrine of bad faith in insurance claims in Wisconsin case law." *Id.* at 563. The absence of *Lueck* from that "study," along with the court's repeated grounding of bad faith liability in contractual privity, demonstrates that the tort of bad faith (with exception of the worker's compensation context discussed later) requires a contractual relationship between plaintiff and defendant.

*Brethorst v. Allstate Property and Casualty Insurance Co.*, 798 N.W.2d 467 (Wis. 2011), arrives at the same conclusion. There, a plaintiff brought a claim for bad faith without also bringing a discrete breach of contract claim. *Id.* at 472. The Wisconsin Supreme Court was tasked with determining, among other issues, whether proving breach of contract is a prerequisite to showing bad faith. *Id.* at 470. To answer that question, the

court once more "examine[d] the development of the tort of bad faith in Wisconsin" before turning to the issue at hand. *Id.* at 473. Its observations mirror those already mentioned:

> Clearly, a person cannot have a valid first-party bad faith claim against an insurer if the person has no contract with the insurer `… because the insurer's implied covenant of good faith and fair dealing arises out of the relationship created by the contract. If there is no contract, the insurer has no duty to act in good faith with respect to a claim.

*Id.* at 480; *see also id.* at 476 ("[A] bad faith claim arises from the contractual relationship between the parties … .").

Against that backdrop, the court concluded that while "[a]n insured may file a bad faith claim without also filing a breach of contract claim," *id.* at 470, "some breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured." *Id.* at 482. In other words, "[t]he fact that a first-party bad faith claim is a separate tort and may be brought without also bringing a breach of contract claim, does not change the fact that first-party bad faith cannot exist without some wrongful denial of benefit under the insurance contract." *Id.* at 480. As reflected in that rule statement, tortious bad faith emanates from the duty present in a contract. *Brethorst*'s discussion of bad faith does not mention *Lueck*.

Wisconsin's civil pattern jury instructions on bad faith make the same point. The comment to the instruction for a first-party bad faith claim states, "[b]y virtue of the relationship between the parties created by an insurance contract, a

special duty arises, the breach of which is a tort and is unrelated to contract damages." Wis. JI-CIVIL 2761 (2011); *see also* Wis. JI-CIVIL 2760 (2003) (linking bad faith liability in the third-party excess verdict context to contractual duties).

In sum, Wisconsin Supreme Court cases such as *Danner*, *Roehl Transport, Inc.*, and *Brethorst*, along with the pattern jury instructions, persuade us of two things. First, other than on a single occasion via an agency theory in *Lueck*, the Wisconsin Supreme Court has limited third- and first-party bad faith claims to parties sharing a contractual relationship. Second, the nearly forty-year-old decision of *Lueck* does not represent current Wisconsin law. Even if *Lueck*'s holding on bad faith survived the U.S. Supreme Court's reversal in 1985, the case has been set to the side. The Wisconsin Supreme Court has examined the tort of bad faith and the scope of its liability numerous times since and has done so in painstaking detail. Those surveys function as a museum of Wisconsin bad faith law, and we cannot ignore *Lueck*'s complete absence as an exhibit. Even more, Wisconsin's abandonment of *Lueck* goes beyond the cases we have discussed. By our count, Wisconsin courts have cited to *Lueck* only twice since its reversal and never in the last thirty years. Of those two references, one was in a dissent, *Universal Foods Corp. v. Labor & Industry Review Commission*, 467 N.W.2d 793, 797–98 (Wis. Ct. App. 1991) (Fine, J., dissenting), and the other merely acknowledged that *Lueck* had been reversed. *See Int'l Ass'n of Machinists & Aerospace Workers, IAM Local 437 v. United States Can Co.*, 441 N.W.2d 710, 714 (Wis. 1989). And no court has ever cited *Lueck* for an agency theory for bad faith liability. Given this history, especially the Wisconsin Supreme Court's omission of the case in several discussions and rulings in this area of the law, we decline to resurrect *Lueck* as controlling law. That case

does not authorize the Daniels to sue United HealthCare for bad faith.

Before moving on, we briefly address two other cases relied on by the Daniels. They point to *Poling v. Wisconsin Physician Service*, 357 N.W.2d 293 (Wis. Ct. App. 1984), which they suggest is supportive of bad faith liability "outside the traditional insurer-insured relationship." In *Poling*, plaintiff Nellie Poling received health insurance through "a group health insurance policy issued by the state of Wisconsin and administered by [Wisconsin Physicians Service]." *Id.* at 296. When WPS denied a claim, Poling sued. *Id.* Poling prevailed on her bad faith claim at a jury trial and, on that point, the Wisconsin Supreme Court affirmed. *Id.* at 295, 297–98.

While *Poling* features a plaintiff prevailing on a bad faith claim against a health plan administrator, the case does not support the Daniels's position. Despite the unique surrounding facts, Poling still had a contractual relationship with WPS. The same jury that awarded bad faith damages to Poling also awarded her breach of contract damages. *Id.* at 295. In fact, WPS's breach of contract liability was not even at issue in Poling, as WPS "d[id] not appeal th[e] breach of contract award." *Id.* So, contrary to the Daniels's assertions, *Poling* is not an example of the Wisconsin Supreme Court extending bad faith liability into a non-contractual relationship.

The Daniels also look to *McEvoy by Finn v. Group Health Cooperative of Eau Claire*, 570 N.W.2d 397, 401 (Wis. 1997), in which the Wisconsin Supreme Court addressed "whether the common law tort of bad faith applies to [health maintenance organizations]." Contrary to traditional insurance companies, health maintenance organizations play a larger role in defining a "network" of specific, preferred providers, which HMO

participants must ordinarily choose from to receive covered care. *Id.* at 402. If a network provider can render care, participants must typically use that provider, or their policy will not cover the costs. But, as the Wisconsin Supreme Court explained in *McEvoy*, "[w]here such network physicians are not equipped to provide necessary medical care to a subscriber, the HMO, pursuant to its contract, may authorize coverage for payment for out-of-network treatment." *Id.* Whether an HMO could be held liable for bad faith was a question of first impression. *Id.* at 401.

Examining the tort of bad faith and the role of HMOs, the court concluded, "HMOs making out-of-network benefit decisions are insurers for purpose of application of the tort of bad faith." *Id.* at 403. Yet, while *McEvoy* partially applied the tort of bad faith into the HMO context, its holding is not as significant as the Daniels allege. The plaintiffs in *McEvoy*, as HMO subscribers, were still bound to the HMO through contract. *Id.* at 404 (explaining that an "HMO is under a *contractual* duty to provide or pay for reasonable services to remedy the subscriber's condition up to the subscriber's policy limits") (emphasis added). That contractual relationship played a crucial role in the Wisconsin Supreme Court's analysis. When comparing HMOs to traditional insurers, the court observed, "[i]n the course of the contractual relationship between the HMO and subscriber, a power imbalance similar to that between a classical insurer and policyholder exists." *Id.* at 402. As such, *McEvoy* sheds little light on this dispute. The plaintiffs in *McEvoy* had a contract with the HMO, so their bad faith claim was rooted in contractual privity.

Neither *Poling* nor *McEvoy* are contrary to the requirement that under Wisconsin law, contractual privity is necessary for bad faith liability.[5]

**B**

We turn now to plaintiffs' second argument, which points to bad faith claims in the realm of worker's compensation. Those claims receive different treatment under Wisconsin law than first- and third-party bad faith claims.

Wisconsin law allows certain bad faith claims in the worker's compensation context to proceed, even when contractual privity is lacking between plaintiff and defendant. The Daniels, who have no contractual relationship with United HealthCare, naturally look to this area of law for support. They direct our attention to *Aslakson v. Gallagher Bassett Services*, 729 N.W.2d 712, 714 (Wis. 2007), a case involving a bad faith claim made against Wisconsin's Uninsured Employers Fund and its third-party claims administrator. We again start with some background before examining how *Aslakson* and worker's compensation case law fits into this appeal.

In *Coleman v. American Universal Insurance Co.*, 273 N.W.2d 220, 221–22 (Wis. 1979), the Wisconsin Supreme Court held that employees may sue their employer's insurer for bad faith processing of worker's compensation claims—even though employees have no direct contractual relationship with their

---

[5] The Daniels also cite *Ferris v. Location 3 Corp.*, 804 N.W.2d 822, 828 (Wis. Ct. App. 2011), for the rule that an agent is liable for his own tortious conduct even when acting on behalf of a principal, but what matters is whether United HealthCare owed the Daniels a duty of good faith and fair dealing, such that they could be held liable under bad faith in the first place.

employer's insurer. In reaching that holding, the court made a broad statement: "[T]he rationale of *Anderson* is applicable not only to the claim of a first-party insured against its insurance company, but is also applicable when the case involves a third-party claim against an insurer." *Id.* Standing alone, that statement suggests an expansion of bad faith liability, such that any outside claimant might sue an insurer for bad faith despite no contractual privity. But the Wisconsin Supreme Court and Legislature curtailed that decision and language.

In *Kranzush*, that court carefully confined the reach of *Coleman* and explained why bad faith claims are permissible in the worker's compensation context absent a contractual relationship between plaintiff and defendant. 307 N.W.2d at 261. The court reasoned that "owing to the design of the worker's compensation laws, the injured employee and the insurance carrier occupy relative positions which are analogous to the insurer-insured relationship at the heart of the *Anderson* tort." *Id.* So, "[u]nder th[ose] legislatively imposed conditions, it is reasonable for the employee to expect fair dealing from the insurer, and it is not unreasonable to impose upon the insurer that duty." *Id.* at 262. That qualification both affirmed the role contractual privity plays in the tort of bad faith and explained why the worker's compensation context is different.

Still, the Wisconsin Supreme Court recognized that its language in *Coleman* was broad and could be read to generally authorize third-party claimants—lacking any contractual privity or statutory relationship to an insurer—to sue for bad faith. *Id.* "To erase any doubt," the court in *Kranzush* instructed that *Coleman*'s language "is not to be taken to confer a general right of action upon third-party claimant tort

victims against the tortfeasor's insurer." *Id.* The Wisconsin Supreme Court meant what it said—it denied precisely that type of claim later in the same opinion. *See id.* at 257. *Kranzush* thus clarified that *Coleman*'s holding is limited, flowed from "the special conditions which attend the relationship of an injured employee and the worker's compensation carrier," and featured "considerations unique to the worker's compensation situation." *Id.* at 262. The Wisconsin legislature also intervened, abrogating *Coleman* and declaring statutory remedies to be the sole option for worker's compensation claimants alleging bad faith against their employer or employer's insurer. *See* WIS. STAT. § 102.18(1)(bp)[6]; *Graef v. Cont'l Indem. Co.*, 959 N.W.2d 628, 635 (Wis. 2021) (explaining that § 102.18(1)(bp) "specifically and explicitly provided an exclusive remedy for bad faith claims against employers and their insurers"); *Aslakson*, 729 N.W.2d at 725 ("The legislature was apparently unhappy with the *Coleman* decision and revised the statutes to respond to *Coleman*.").

This background sets the stage for *Aslakson*, which features a particular set of facts. *Aslakson* involved Wisconsin's Uninsured Employers Fund, a state-run entity which "provides compensation to employees who suffer injuries for which their uninsured employer is liable." 729 N.W.2d at 714 (citation omitted). The Wisconsin Department of Workforce

---

[6] The relevant part of that section reads: "If the division determines that the employer or insurance carrier suspended, terminated, or failed to make payments … as a result of malice or bad faith, the division may include a penalty in an award to an employee for each event or occurrence of malice or bad faith. That penalty is the exclusive remedy against an employer or insurance carrier for malice or bad faith." WIS. STAT. § 102.18(1)(bp)

Development oversees the Uninsured Employers Fund, and that Department contracted with Gallagher Services to serve as its third-party administrator. *Id.* Under that arrangement, Gallagher Services handled plaintiff Christopher Aslakson's worker's compensation claim. *Id.* Aslakson received the worker's compensation payments he was owed but only after a protracted legal battle with Gallagher Services. *Id.* at 716. As a result, Aslakson sued the Uninsured Employers Fund and Gallagher Services for bad faith. *Id.*

The Uninsured Employers Fund enjoys sovereign immunity as a state entity, so it was dismissed from the suit. *Id.* But Aslakson's claim against Gallagher Services rose to the Wisconsin Supreme Court, which had to determine whether the claim was cognizable as a matter of statutory and common law. The court first concluded that under such facts, the Wisconsin's Workers Compensation Act did not proactively bar a bad faith claim against Gallagher Services. *Id.* at 724. Though the court acknowledged exclusive statutory remedies had replaced the tort of bad faith for most worker's compensation claims, *id.* at 719–20, it concluded that the applicable statute had not considered the situation in *Aslakson*, as it did not account for the potential bad faith of the Uninsured Employers Fund. *Id.* at 725–26. That left the court to decide whether Aslakson could hold Gallagher Services, as the Fund's third-party claims administrator, liable for bad faith. Partially reviving its reasoning in *Coleman*, the court ruled that Aslakson could pursue his claim. *Id.* at 726–28.

The Daniels point to *Aslakson* as supporting their claim against United HealthCare. We understand why, as *Aslakson* featured the Wisconsin Supreme Court authorizing a bad faith claim against a third-party claim administrator.

Nonetheless, we read *Aslakson* as combining the worker's compensation context with distinctive factual circumstances. As the Wisconsin Supreme Court explained in *Kranzush* and other cases, the worker's compensation context implicates special rules for the tort of bad faith. Because worker's compensation claims are "the object of a sweeping statutory scheme," they have their own bad faith jurisprudence, and decisions implicating that regime are not translatable to other claims. *Roehl Transport, Inc.*, 784 N.W.2d at 560 (quoting *Kranzush*, 307 N.W.2d at 261).

Moreover, Aslakson featured the additional complication that the Uninsured Employers Fund had immunity. In that case, the plaintiff would have no one to sue if he could not bring a bad faith claim against the third-party claims administrator. That sovereign immunity factor, not present here, underlies the Wisconsin Supreme Court's holding in *Aslakson*, 729 N.W.2d at 727. So reliance on worker's compensation case law, such as *Aslakson*, cannot save the Daniels's bad faith claim against United HealthCare. The Wisconsin Supreme Court has concluded that rules applicable in that context are not to be extended beyond the bounds of worker's compensation. *Kranzush*, 307 N.W.2d at 261–62. Under diversity jurisdiction we are bound by that state's substantive law.

## III

The Daniels also bring claims for punitive damages and statutory fines under WIS. STAT. § 628.46. They cannot recover interest under that provision for benefits wrongly denied. The statute deals only with "overdue payments" that should have been made on time by an insurer. § 628.46(1). United HealthCare is not an insurer, and with their other claims dismissed, the Daniels cannot demonstrate that payment on their

claims is overdue. Because we dismiss each of the Daniels's substantive claims, they also have no basis on which to recover punitive damages. *Brown v. Maxey*, 369 N.W.2d 677, 680 (Wis. 1985) ("We stress that punitive damages are in the nature of a remedy and should not be confused with the concept of a cause of action.").

**IV**

The Wisconsin Supreme Court is no stranger to the tort of bad faith, having surveyed its state law on that topic many times over several decades. Wisconsin law does not authorize the Daniels to recover from United HealthCare for bad faith. Their related claims for statutory interest and punitive damages likewise fall short. The district court properly dismissed the Daniels's amended complaint, so its judgment is AFFIRMED.